MIGUEL A. ALVELO MARRERO, demandante y recurrido, *v.* INSURANCE COMPANY OF PUERTO RICO y FÉLIX RAMÓN ORTIZ JUSTINIANO, demandados y recurrentes.

*Número:* R-72-103        *Resuelto:* 30 de mayo de 1973

*Jaime A. García Blanco, Carmen Sonia Zayas* y *B.M. Sánchez Fernández, José E. Caso,* abogados de los recurrentes; *Juan M. Ponce Fantauzzi,* abogado del recurrido.

PER CURIAM: A las 5:30 a.m. del 2 de junio de 1970 el codemandado Ortiz Justiniano conduciendo su automóvil en estado de embriaguez llamó a la casa del demandante Alvelo Marrero y le pidió que lo llevara a su hogar. Aun cuando el ebrio no le permitió conducir, Alvelo en consideración a que el otro era su patrono, decidió acompañarlo asumiendo voluntariamente el riesgo apreciable de la condición de ebriedad del demandado. Una vez el demandante abordó el vehículo el demandado tomó una ruta distinta a la de su casa conduciendo a alta velocidad en busca de un último trago, se quedó dormido en el volante y chocó contra un árbol, resultando el demandante con las lesiones que el juez de instancia en su sentencia describe así: miositis aguda de los músculos cervicales y paravertebrales, fuerte trauma en la frente, en la nariz y otras partes del cuerpo. A la fecha del juicio 18 de noviembre de 1971 según la referida sentencia el demandante mostraba desviación del cartílago de la nariz y un engrosamiento del tejido de la frente exactamente sobre las cejas, padeciendo todavía de dolores de cabeza.

El juez de instancia estimó los daños del demandante en $15,000 y por considerar que éste había asumido libremente el riesgo de accidente, le imputó el 50% de la culpa aplicando la norma de negligencia comparada; y dedujo $1,000 corres-

pondientes a la exención establecida en la Sec. 8(2)(a) de la Ley de Protección Social por Accidentes de Automóviles (9 L.P.R.A. sec. 2058(2)(a), resultando en una compensación de $6,500 para el demandante.

Este Tribunal expidió auto de revisión limitado únicamente a la adecuación del estimado de daños.

■ En el presente caso el juzgador de los hechos tuvo que recurrir en dos ocasiones a una afinada discreción: primero, al fijar la proporción de culpa atribuible a un demandante en quien el propósito de ayudar al prójimo superó su instinto de conservación y montó en el carro de su amigo y patrono que le pedía ayuda, asumiendo el conocible riesgo de accidente por la ebriedad del conductor; y segundo, al evaluar los elementos objetivos y subjetivos integrantes de sufrimiento físico y moral, episodio final de la conducta de Buen Samaritano que sacó un hombre de su casa en la madrugada para ayudar a otro a llegar a la suya. La gama de elementos que entran en la percepción por el juzgador del grado de culpa, y del equivalente en dólares devaluados de la angustia y el dolor humano, es tan variada que no podemos remitirnos a una escala o tabla para la solución apropiada a cada incidencia dañosa; todavía no hemos llegado al fácil y vertiginoso método en que la computadora electrónica desplaza la delicada y exigente función del juez confrontado con la necesidad de medir y traducir a ecuaciones matemáticas y a compensación pecuniaria algo tan indefinible como el dolor de un ser humano. De ahí que la norma adoptada de no intervenir cuando la prueba ante éste sostiene sus conclusiones. *Prado* v. *Quiñones*, 78 D.P.R. 322, 338 (1955); *Dávila* v. *Autoridad de Tierras*, 78 D.P.R. 859 (1955).

Debemos partir del supuesto de que el juez de instancia separó debidamente las dos porciones de su actuación adjudicativa de la controversia: distribución de negligencia y evaluación de los daños, por ser procesos independientes el uno del otro aun cuando en el fallo final coexistan y cada uno por

su lado influya en la cuantía de la indemnización, resultado último del pleito.

Es a la luz de este proceso decisional con base en la prueba que ha de examinarse la adecuación de la indemnización concedida y proveer así al recurso de la parte demandada ya que el demandante no ha recurrido en revisión.

Describiendo el accidente declaró el demandante en el juicio que su cara dio contra el cristal del automóvil y se torció la nariz y que subsiguientemente tuvo dificultad al respirar y dolor en la nuca, la cabeza y la frente, y que recibió tratamiento de fisioterapia durante 31 días. A la fecha del juicio se queja de dolor en el cuello cuando vira la cara, que tiene que respirar por la boca en vez de por la nariz; que tiene la nariz desviada y una protuberancia en la frente. Llegando a este punto el récord revela lo siguiente:

"PARTE DEMANDANTE

Vuestro Honor, a los fines de récord, queremos hacer constar que a partir de ambos ojos y en la parte de la frente, se ve el tejido, una protuberancia en el tejido y hacia el frente.

PARTE DEMANDADA

Yo lo veo un rostro normal. ¿Que se ve un tejido protuberante? No entiendo.

SEÑOR JUEZ

Yo no sé si en este certificado . . .

PARTE DEMANDADA

No dice nada de eso, Vuestro Honor.

PARTE DEMANDANTE

Habla de eso.

Vuestro Honor, nosotros quisiéramos que Vuestro Honor a los fines de récord describiera la forma en que se ve este tejido de aquí.

SEÑOR JUEZ

A mí me es difícil hacer la descripción. Se lo confieso al compañero. Es una de las limitaciones que yo tengo.

PARTE DEMANDANTE

Si Vuestro Honor pudiera tocar al testigo para que pudiera palpar aquí este tejido aquí y este tejido, la diferencia en tejido.

PARTE DEMANDADA

Imagínese, que Vuestro Honor tocara ahí.

SEÑOR JUEZ

Yo confieso que es una de las limitaciones que tengo. Tengo que depender de lo que haya aquí.

PARTE DEMANDANTE

Le pregunto yo si usted tenía ese tejido más grueso antes del accidente.

PARTE DEMANDADA

Yo voy a objetar que si el tejido más grueso, si el tejido se pone más grueso. Si existe médicamente hablando, debe venir un médico y explicar al tribunal que como consecuencia de un trauma hay una condición de esta forma, que si lo tiene más grueso en un lado que en otro . . .

SEÑOR JUEZ

Deje ver los certificados a ver si hay suficiente para llegarse a una conclusión.

SEÑOR JUEZ

Yo no veo mucho aquí de los doctores en esto, pero ya él ha descrito algo. Adelante."

Más adelante dice el juez recurrido:

"PARTE DEMANDANTE

Con relación a esto, el testimonio es que antes no tenía un engrosamiento de tejido y ahora tiene un engrosamiento de tejido.

SEÑOR JUEZ

Sobre eso vamos a decir otra cosa. La verdad es que el tribunal nota una leve anormalidad del tejido o parte de su frente en ambos ojos.

Creo que esos son los daños probados.

PARTE DEMANDANTE

Con relación a la edad, Vuestro Honor del demandante y a su profesión y oficio, a los fines de la desfiguración.

PARTE DEMANDADA

La desfiguración, aparte de lo que dijera el testigo, nosotros descansamos en lo que observe el tribunal.

SEÑOR JUEZ

Eso es lo que observa el tribunal y le dice el tribunal que no

es una cosa muy notable y marcada a distancia. Tiene que estar prevenido y cerca, agraciadamente para el señor."

El más abarcador y reciente certificado médico sobre la condición del demandante ofrecido en evidencia por éste y admitido por estipulación de las partes, está suscrito por el Dr. Walter J. Benavent, fechado a 23 de septiembre de 1970 y en lo pertinente expresa:

"Del historial se desprende que el día 2 de junio de 1970 el Sr. Alvelo sufrió trauma en la nariz como resultado de un accidente de automóvil. Luego del accidente el paciente fue atendido por su médico particular quien tomó placas radiográficas de los huesos nasales. Dichas placas no revelaron fractura de los huesos nasales. Al presente el paciente se queja de dificultad en respirar por el lado izquierdo de la nariz. Además expresa que con leve trauma a la nariz se provoca hemorragia nasal.

Al examen observo ligera prominencia del hueso nasal en la línea dorsal. Los huesos nasales se palpan en su posición normal no habiendo desplazamiento de ninguno de los dos. Se observa ligera desviación del cartílago en el tabique nasal hacia el lado derecho.

Soy de opinión que no habiendo desplazamiento de los huesos nasales en este paciente una intervención quirúrgica en los mismos no está indicada.

Es posible que la dificultad respiratoria que aqueja a este paciente sea de carácter transitorio por virtud de la hinchazón que se produce dentro de la nariz como resultado del trauma recibido."

■ Las observaciones y apreciaciones del tribunal a quo y la prueba médica nos dirigen hacia la reducción a $10,000 en el estimado de daños y a $4,000 la indemnización que corresponde al demandante.

*Así modificada se confirmará la sentencia.*

El Juez Asociado, Señor Martín, disintió.