MARÍA MERCEDES MALDONADO, demandante y recurrida, *v.* INTERAMERICAN UNIVERSITY, demandada y tercera demandante y recurrente; OKSIO REALTY, INC., tercera demandada y recurrente.

*Números:* R-73-130    *Resueltos:* 25 de noviembre de 1975
R-73-131

*Segurola & Montalvo,* abogados de la recurrida; *José A. Rivera Mercado* y *Harold D. Vicente,* abogados de Interamerican University; *Vicente Santori Coll,* abogado de Oksio Realty, Inc.

PER CURIAM: El 19 de febrero de 1971 una joven de 26 años de edad, estudiante de la Universidad Interamericana en su recinto de Hato Rey, sufrió una caída mientras bajaba unas escaleras del edificio en que tomaba clases. Como consecuencia sufrió daños en su columna vertebral que le han ocasionado una incapacidad equivalente al 25% de sus funciones fisiológicas generales. Tuvo que ser sometida a prolongados tratamientos por ortopedas, fisiatras, neurólogos, y finalmente por un siquiatra. Demandó a la Universidad Interamericana y a Oksio Realty, Inc., dueña y arrendadora del edificio, en reclamación de indemnización por los daños sufridos. Por sentencia dictada el 13 de marzo de 1973 el tribunal a quo declaró con lugar la demanda y condenó a ambas demandadas a pagarle $25,000 por daños físicos y morales, $1,000 por gastos médicos incurridos, y $2,000 para honorarios de abogado. La sentencia declaró también con lugar demandas de coparte presentadas por cada demandada contra la otra. De tal suerte, la sentencia obliga a ambas demandadas solidariamente frente a la demandante, y a cada una respecto de la otra por la mitad de la suma total a pagarse. Ambas demandadas han recurrido en revisión ante nos. Hemos consolidado sus recursos y en esa forma dispondremos de ellos.

■ Como es usual en estos casos, las recurrentes atacan la determinación del tribunal recurrido que les declara incursas en responsabilidad, e impugnan la cuantía. El segundo apuntamiento es insostenible. Una persona joven, estudiante universitaria, que a su temprana edad de 26 años quedó limitada en una cuarta parte de sus funciones y potencial físico no está exageradamente compensada cuando sus daños se estiman en $25,000. Las recurrentes nos invitan a examinar nuestras decisiones en otros casos para fines de comparación de daños y cuantías sostenidas o concedidas. Las razones que expusimos en *Meléndez* v. *Metro Taxicabs*, 68 D.P.R. 766, 770–771 (1948) son igualmente válidas hoy para rechazar tal

invitación. La cuantía por concepto de daños depende en cada caso de sus particulares hechos y circunstancias, aparte del factor de discreción judicial del tribunal sentenciador, merecedor siempre de nuestra deferencia.

■ Examinemos el aspecto de responsabilidad. Se predicó aquí en la negligencia de las demandadas, consistente en la condición resbaladiza de la escalera, agravada el día del accidente por la humedad que produjo la lluvia que penetró por una ventana defectuosa, y por el inadecuado alumbrado del área. Estas determinaciones tienen apoyo en la prueba desfilada, contrario a lo ocurrido en *Malavé* v. *Hosp. de la Concepción*, 100 D.P.R. 55 (1971), caso que con gran empeño enfatizan las recurrentes.

Tanto la empresa dueña y arrendadora del edificio, como la arrendataria pudieron prever que las escaleras serían usadas a diario por cientos de estudiantes a quienes tenían la obligación de proveer condiciones adecuadas para su seguridad. Es de conocimiento general, además, que los estudiantes, personas en su mayoría jóvenes, no suben y bajan escaleras con la parsimonia de personas mayores, y que es corriente que en ocasiones avancen con rapidez debido a cambios de clases y de salones y a su prisa por evitar llegar tarde. Mantener un piso resbaladizo por estar "completamente pulido," como declaró la demandante que estaba, en adición a la humedad—circunstancia esta última ausente en *Feliciano* v. *Escuela de Enfermeras*, 94 D.P.R. 535 (1967)·(¹)—en adición a las otras circunstancias—ventana rota que permitió que entrara el agua de lluvia y alumbrado insuficiente—constituyen negligencia que en este caso fue causa del accidente. *Cf. Weber* v. *Mejías*, 85 D.P.R. 76, 80 (1962). La medida correctiva de fijar a los escalones franjas de material antiresbalante, to-

---

(¹)En este caso se responsabilizó a la demandada porque el piso, al bajar de una escalera, era sumamente liso y resbaloso. Se sostuvo que ello lo hacía peligroso y constituía un riesgo indebido, independientemente de que estuviera o no mojado.

mada luego del accidente, no nos parece que constituyera una medida ni difícil ni excesivamente costosa.

■ Empero, no estamos conformes en que la negligencia de las demandadas, o de una de ellas, fuera la única causa del accidente. Señalamos en *Malavé*, supra, pág. 63, que cuando se trata de caídas en escaleras actuamos con particular minuciosidad en el descargue de nuestra misión revisora. Y citamos a *Santaella Negrón* v. *Licari*, 83 D.P.R. 887, 900 (1961), donde dijimos:

> "La existencia de una escalera por donde una persona ha de transitar es aparente y obvia y también es de esperarse que las personas ejerzan prudencia y cuidado al subir o bajar escaleras."

■ Aquí la escalera tenía pasamanos a ambos lados. La demandante declaró que al bajar, ella iba agarrada del pasamanos del lado derecho, y con su mano izquierda sostenía sus libros. Si así lo hacía, no parece lógico que al resbalar no pudiera detener su caída, como ella lo declaró, y que sufriera una caída tan aparatosa como la que ella describió, en que resbaló al bajar del segundo escalón y siguió rodando escaleras abajo hasta caer en el último, en un tramo de diez u once escalones, según se aprecia en las fotografías que obran en autos. La circunstancia de que el alumbrado fuese insuficiente era motivo adicional para que la demandante fuera más prudente aún al descender por las escaleras. Obviamente no lo fue, y su negligencia contribuyó al accidente tanto como la negligente condición de la escalera.

Réstanos pasar sobre el aspecto de si ambas o sólo una de las recurrentes debe responder. Una y la otra se achacan la responsabilidad a base de las cláusulas del contrato de arrendamiento. Hemos examinado el contrato y no es un modelo de claridad. Mientras por la cláusula novena la arrendadora se comprometió "a proveer servicio de limpieza de entradas, escaleras, patios interiores . . .", por la décimonovena la arrendataria se obligó a mantener "las premisas [*sic*] objeto

de este contrato limpias, cuidadas y en forma apropiada. . . ."
y a llevar a cabo "todas las reparaciones dentro de las
premisas [sic] arrendadas que sean motivadas por la negli-
gencia y abuso de esta y en adición, proveerá el manteni-
miento normal y reparaciones menores que sean necesarias
para su uso y disfrute." Por otra parte, leemos en la cláusula
décimotercera:

"La 'Arrendadora' se compromete a llevar a cabo toda clase
de reparaciones que sean necesarias, tales como servicio sani-
tario obstruido, *arreglo de ventanas* y puertas y la sustitución
de éstas cuando no sean susceptibles de reparación. Debe inter-
pretarse esta cláusula en el sentido de que la 'Arrendadora' ven-
drá obligada a reparar o sustituir aquello que se gaste o se rompa
u obstruya por el uso normal, mas, sin embargo, cualquier repa-
ración que sea necesaria por el abuso de la propiedad por parte
de la 'Arrendataria' y/o sus clientes, será por cuenta y cargo de
dicha 'Arrendataria'." (Énfasis nuestro.)

No hubo prueba sobre cómo se rompió la ventana. La con-
tención de la arrendadora de que fue rota por estudiantes es
una mera conjetura. En ausencia de prueba sobre quien
redactó el contrato no se puede aplicar ninguna regla de
hermenéutica sobre a qué parte deben favorecer las cláusulas
oscuras.

■ Bajo el Art. 1444 del Código Civil, 31 L.P.R.A. sec.
4051, el arrendador está obligado a hacer, en la cosa objeto del
contrato, durante el arrendamiento, "todas las reparaciones
necesarias a fin de conservarla en estado de servir para el uso
a que ha sido destinada." En ausencia de pacto en contrario,
la arrendadora estaba obligada por esta disposición. Las
cláusulas del contrato, por ser conflictivas y oscuras, no
pueden interpretarse para hacer inaplicable esta disposición
supletoria de voluntad que establece el Código.

■ No puede tampoco la arrendadora librarse de respon-
sabilidad porque la arrendataria no la notificara del estado de
la ventana y condiciones del piso y de las escaleras. Tales con-

diciones eran conocidas de la arrendadora, cuyos empleados diariamente efectuaban labores de limpieza en el edificio arrendado. Aunque la propiedad estaba bajo el control de la arrendataria, el conocimiento por la arrendadora del estado peligroso de las escaleras las hace a ambas igualmente responsables ante la demandante. Véase *Ramos* v. *E.L.A.*, 91 D.P.R. 471, 474–477 (1964).

*Se modificará la sentencia del tribunal recurrido para reducir en un cincuenta por ciento la indemnización concedida a la demandante-recurrida y para eliminar la concesión de honorarios de abogado.*