EDUARDO COLÓN FLORES y HERIBERTO COLÓN CORREA, demandantes y recurrentes, *v.* MUNICIPIO DE GUAYAMA y ASOCIACIÓN DE GARANTÍA DE SEGUROS MISCELÁNEOS, demandados y recurridos.

*Número:* R-82-103        *Resuelto:* 20 de abril de 1983

*Russell A. del Toro* y *Francisco López Romo,* abogados de los recurrentes; *Miguel L. Lineres Grau,* de *Parra, Del Valle & Frau,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El planteamiento central que consideramos en el presente recurso es secuela obligada de nuestra decisión en *Torres* v. *Castillo Alicea*, 111 D.P.R. 792 (1981). Resolvimos en *Torres* que las disposiciones de la Ley de Pleitos contra el Estado, en cuanto limitaban su responsabilidad por daños provenientes de culpa y negligencia, son inconstitucionales. A igual conclusión es forzoso llegar con respecto al Art. 96-A de la Ley Municipal, 21 L.P.R.A. sec. 1603a,([1]) cuya validez constitucional es aquí atacada.

---

([1]) Esta disposición formaba parte de la Ley Municipal que estaba vigente para la fecha en que ocurrieron los hechos que aquí nos ocupan, recogida en forma substancialmente igual en el Art. 11.03 de la Ley Orgánica de los Municipios, Num. 146 de 18 de junio de 1980 (21 L.P.R.A. sec. 3403). Lo que aquí resolvemos es por tanto igualmente aplicable al Art. 11.03 de la Ley actualmente en vigor. El Art. 96-A (Ley de junio 24, 1966, Núm. 119, pág. 388) disponía:

"Las reclamaciones contra los municipios, por daños y perjuicios a la persona o a la propiedad, causados por culpa o negligencia de la corporación municipal, no podrán exceder de la cantidad de quince mil (15,000) dólares. Cuando por una misma actuación u omisión se causaren daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un solo perjudicado, la indemnización por todos los daños y perjuicios que causare dicha acción u omisión no podrá exceder la suma de treinta mil (30,000) dólares. Si de las conclusiones del Tribunal surgiera que la suma de los daños causados a cada una de las personas excede de treinta mil (30,000) dólares, el Tribunal procederá a distribuir dicha suma de treinta mil (30,000) dólares entre los demandantes, a prorrata, tomando como base los daños sufridos por cada uno. Cuando se radique una acción contra cualquier municipio, de acuerdo con los términos de este artículo, el Tribunal ordenará que se notifique, mediante la publicación de edictos en un periódico de circulación general, a todas las personas que pudieren tener interés común, que deberán comparecer ante el Tribunal, en la fecha dispuesta en los edictos, para que sean acumuladas, a los fines de proceder a distribuir la cantidad de treinta mil (30,000) dólares entre los demandantes, según se provee en este artículo.

"Para poder reclamar por sumas mayores que las anteriormente dispuestas, o para que el Tribunal pueda adjudicar dichas sumas mayores, será necesario el consentimiento de la Asamblea Municipal, por dos terceras (2/3) partes de sus miembros, expresado mediante ordenanza o resolución al efecto, en la cual se consignarán las razones que justifican tal consentimiento.

"Nada de lo aquí dispuesto impedirá que la Asamblea Legislativa autorice cualquier reclamación contra cualquier municipio, por sumas mayores de las antes mencionadas, cuando en el interés de la justicia así lo estime conveniente."

I

En horas de la madrugada del 17 de diciembre de 1974, un joven de 23 años de edad, de nombre José A. Colón Correa, se dirigía a su trabajo caminando por la orilla de una carretera estrecha en la jurisdicción de Guayama. Un camión de dicho municipio que discurría en la misma dirección del joven, sin luces, y sin dar aviso alguno de su proximidad, invadió el paso del peatón con una plataforma ancha que arrastraba y que sobresalía hacia los lados, alcanzándolo y causándole serias y graves lesiones.

El joven no murió en el acto. Aunque el golpe le desbarató la columna vertebral, dejándole parapléjico, y le produjo una contusión cerebral, se mantuvo consciente todo el tiempo, hasta diez días más tarde, cuando falleció en el Hospital de Distrito de Ponce al sufrir un fallo cardíaco mientras era sometido a radiografías y análisis. El tratamiento médico durante esos diez días fue sumamente doloroso. Los records de su hospitalización revelan un angustioso cuadro de un joven aquejado de profundos dolores, consciente de que su muerte era inevitable, aferrándose valientemente a un frágil hilo de vida, viendo desfallecer sus esperanzas de felicidad junto a una joven con quien estaba próximo a casarse.

El padre, único heredero del joven Colón Correa, y su otro hijo, Heriberto, demandaron por daños y obtuvieron sentencia contra el Municipio de Guayama y su compañía aseguradora. Dicha sentencia limitó la responsabilidad del municipio a $15,000, máximo permitido por el Art. 96-A de la Ley Municipal, antes transcrito.(²) Se incluyó en dicha suma la cantidad de $10,000 en que valoró el tribunal sentenciador los sufrimientos físicos y angustias mentales que padeció el joven Colón Correa durante los diez días de

---

(²) Véase el escolio 1.

agonía que transcurrieron desde el accidente, hasta el momento de morir. (³)

Plantearon los demandantes en instancia que nuestra decisión en *Torres,* supra, es aplicable y tuvo el efecto de anular los límites monetarios dispuestos por el Art. 96-A de la Ley Municipal. El tribunal no acogió el planteamiento por entender que *Torres* no tiene efecto retroactivo. (⁴) Plantearon, además, los demandantes que es insuficiente la cantidad de $10,000 en que se valoraron los sufrimientos y angustias por los que pasó el joven Colón Correa durante los diez días que vivió después del accidente. El tribunal se negó a reconsiderar.

Recurrieron ante nos los demandantes y expedimos orden a los demandados recurridos para mostrar causa por la cual no debíamos expedir el auto solicitado y (1) aumentar la cuantía concedida por las angustias y sufrimientos del joven Colón Correa, y (2) decretar la inconstitucionalidad del Art. 96-A. Citamos a *Torres,* supra, y dispusimos que se notificara al Secretario de Justicia para que se expresara al respecto. Tanto el Secretario de Justicia como el Municipio de Guayama han comparecido. No así la asociación aseguradora.

## II

El Secretario de Justicia y el municipio basan su defensa del Art. 96-A en la inaplicabilidad e irretroacti-

---

(³) El tribunal estimó en $49,702.02 el lucro cesante, en $5,000 los sufrimientos del padre y en igual cantidad los del hermano. De ese total, responsabilizó a la aseguradora The Commonwealth Insurance Co., sustituida, por estar en liquidación, por la Asociación de Garantías de Seguros Misceláneos, en $30,000, límite de la póliza. Condenó, además, a dicha aseguradora al pago de $5,000 para honorarios de abogado más intereses por temeridad. Los demandados no han recurrido.

(⁴) Nuestra decisión en *Torres* v. *Castillo Alicea,* 111 D.P.R. 792 (1981), se produjo el 18 de diciembre de 1981. La sentencia del tribunal de instancia, dictada el 21 de octubre de 1981, estaba bajo consideración de dicho tribunal al resolverse *Torres* por estar pendiente una moción sobre determinaciones adicionales de hechos oportunamente presentada. *Torres* fue invocado en tiempo oportuno. Reglas 47 y 68 de Procedimiento Civil.

vidad de *Torres*, y en la razonabilidad de los límites dispuestos por dicho artículo. Consideramos estos planteamientos por separado.

—A—

En *Torres* declaramos inconstitucionales los incisos (a) y (c) del Art. 2 de la Ley de Reclamaciones y Demandas Contra el Estado. No estaba ante nos el Art. 96-A de la Ley Municipal y, por tanto, actuó acertadamente el tribunal de instancia al negarse a aplicar dicho caso. *Quintero* v. *Servicio de Riego*, 66 D.P.R. 940 (1947). No tenía ante sí un pleito contra el Estado. El planteamiento sobre irretroactividad de *Torres* no tenía ni tiene, por tanto, que ser considerado.([5])

—B—

Examinemos la cuestión central sobre la constitucionalidad del Art. 96-A de la Ley Municipal.

■ Los municipios son criaturas jurídicas de la Asamblea Legislativa de Puerto Rico. 4 *Diario de Sesiones de la Convención Constituyente* 2618 (1961). Como tales, corresponde a ésta determinar lo relativo a su organización y funcionamiento. Constitución del Estado Libre Asociado de Puerto Rico, Art. VI, Sec. 1; Art. 37 de la Ley de Relaciones Federales con Puerto Rico, L.P.R.A., 1982, T.1, pág. 236. Desde el punto de vista histórico, los municipios han existido como entidades autónomas del Estado con el propósito de posibilitar la efectiva realización de sus fines político-administrativos. También se ha dicho que existen con el propósito de poner en efecto algún poder que el Estado podría ejercer, pero no tan convenientemente como la entidad municipal. *People* v. *Chicago Transit Authority*, 64

---

([5]) El tribunal de instancia, no obstante, pudo atender el planteamiento sobre inconstitucionalidad del Art. 96-A en vista de los razonamientos de nuestra decisión en *Torres*, previa notificación y audiencia al Secretario de Justicia. Regla 21.3 de Procedimiento Civil.

N.E.2d 4 (1945). Con la creación del municipio, el Estado puede atender de forma mucho más satisfactoria el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular. Véase, *Vélez* v. *Municipio de Toa Baja*, 109 D.P.R. 369 (1980).

La presencia del municipio como ente regulador subordinado al Estado existió en Puerto Rico por lo menos desde tiempos de España. Véase, *e.g.*, A. R. Caro Costas, *El régimen municipal en Puerto Rico en el siglo XVIII*, San Juan, Instituto de Cultura Puertorriqueña, 1966 (estudio preliminar). Su organización y funcionamiento, basados en un esquema corporativo, se rige hoy día por legislación especial.[6] Siendo criaturas del Estado subordinadas a éste, la Asamblea Legislativa no puede delegarle más poderes e inmunidades que los que el Estado posee. El municipio no es soberano por sí mismo. 1 *McQuillin Mun Corp* Sec. 2.08a, pág. 143 (3ra ed.).

En lo que concierne a la responsabilidad por daños ocasionados por un municipio, sus agentes o empleados, la Asamblea Legislativa puede limitar su responsabilidad en la misma medida en que podría limitar la propia responsabilidad del Estado. Del mismo modo, si la Asamblea Legislativa pudiera limitar la responsabilidad del Estado, no estaría obligada necesariamente a limitar la responsabilidad del municipio, sino que, por el contrario —y como sucede frecuentemente con la creación de otras corporaciones públicas— podría ampliar la responsabilidad de sus criaturas como si se tratara de entidades privadas. *Cf. Canchani* v. *C.R.U.V.*, 105 D.P.R. 352, 357 (1976).

---

[6] Para una relación de la legislación municipal en el siglo XIX véase, E. Córdova, *Curso de gobierno municipal*, Ed. Universitaria, 1964. Sobre la legislación de principios del presente siglo consúltese, B. Pagán, *Ley municipal*, Biblioteca de Divulgación Legal, 1925, Vol. 1. La vigente Ley Orgánica de los Municipios de Puerto Rico, Núm. 146 de 18 de junio de 1980, derogó la Ley Municipal de 1960, Núm. 142 de 21 de julio de 1960, que a su vez derogó la Ley Municipal de 1928.

■ Al declarar inconstitucionales los límites de $15,000 y $30,000 fijados en el Art. 2(a) y (c) de la Ley de pleitos contra el Estado, es forzoso que los mismos límites de responsabilidad fijados en provecho de los municipios en el Art. 96-A no pueden sostenerse sin superarse los escollos de *Torres*, supra.

En *Torres* establecimos que el esquema estatutario dispuesto para dispensar los límites de responsabilidad financiera del Estado adolecía, *inter alia*, de que: (*a*) la acción legislativa está desprovista de criterios de elegibilidad que den a todos trato igual (pág. 798); (*b*) la ley no contempla un organismo llamado a evaluar la solicitud y hacer una determinación preliminar sobre la existencia de una causa de acción que pueda separar la validez jurídica de la reclamación, de la simpatía o solidaridad que inspiran las desgracias (pág. 799); (*c*) resulta irrisoria la indemnización a que el desarrollo de la economía ha reducido los valores de las cuantías estatuidas al momento de aprobarse la legislación (pág. 799); (*d*) el límite fijado no toma en consideración la magnitud de la pérdida del reclamante (pág. 800); y (*e*) el método de dispensa deja la eficacia de la decisión judicial a merced de la aprobación de la Asamblea Legislativa (pág. 803). Dijimos, en resumen, que "[e]s patente la endeblez de este sistema legal que al repartir el foro de remedio entre la Asamblea Legislativa y [el] tribunal de justicia no es capaz de ofrecer un igual acceso de todo litigante a los procesos decisionales a que obligatoriamente debe someterse para obtener una adjudicación de su acción civil".

El esquema estatutario del Art. 96-A no es distinto del que anuláramos en *Torres*. El Art. 7 de la Ley de Reclamaciones y Demandas Contra el Estado, 32 L.P.R.A. sec. 3082, disponía que "[p]ara ejercitar una causa de acción de las contenidas en los incisos (a) y (c) de la sec. 3077 de este título, por una suma mayor que la allí autorizada y para

pagar el exceso de una sentencia sobre dichas sumas, será preciso obtener autorización legislativa específica".

De la misma manera, el Art. 96-A dispone en su penúltimo párrafo que "[p]ara poder reclamar por sumas mayores que las anteriormente dispuestas [en dicho artículo], o para que el Tribunal pueda adjudicar dichas sumas mayores, será necesario el consentimiento de la Asamblea Municipal, por dos terceras (2/3) partes de sus miembros, expresado mediante ordenanza o resolución al efecto, en la cual se consignarán las razones que justifican tal consentimiento".

De la simple comparación de ambos textos se advierte que el Art. 96-A no provee criterios de elegibilidad, no contempla un organismo que evalúe las reclamaciones, y reparte el foro de remedio entre los tribunales de justicia y una asamblea municipal. Más aún, en la Ley Municipal existe el agravante de que la dispensa a los límites fijados debe producirse mediante voto afirmativo de dos terceras partes de la Asamblea Municipal y no de la simple mayoría, como es el caso de la Ley de Reclamaciones y Demandas Contra el Estado. Aunque se reconoce la facultad de la Asamblea Legislativa para autorizar cualquier reclamación contra cualquier municipio por sumas mayores a las dispuestas en el Art. 96-A, tal disposición adolece de los mismos vicios que señalamos en *Torres*.

El Estado argumenta,[7] sin embargo, que en el presente caso se impone una solución distinta, porque las finanzas municipales no soportarían el peso de una responsabilidad municipal ilimitada y que, por ende, se afectarían servicios esenciales que presta el municipio. A este argumento señalamos que la disponibilidad de fondos públicos

---

[7] No tuvimos el beneficio de considerar la posición del municipio, pues éste se limitó a exponer simplemente en su alegato que el caso de *Torres*, supra, es inaplicable al de autos por no tratarse éste sobre la Ley Municipal y que, además, los demandantes no atacaron la validez constitucional del Art. 96-A en el tribunal de instancia. Ambos planteamientos han sido debidamente atendidos en el texto de esta opinión.

no puede ser un criterio determinante para decidir si una persona tiene derecho a que se le proteja de la aplicación de una ley que afecta sus derechos constitucionales. El gobierno, sea estatal o municipal, debe repartir el costo de administrar los asuntos públicos entre los miembros de la sociedad, del mismo modo en que se reparte el costo de los servicios gubernamentales esenciales o los costos de ornato y recreo públicos.

En Estados Unidos, de donde hemos calcado la estructura conceptual y organizativa del municipio actual, los tribunales avanzan rápidamente hacia la abolición de la doctrina de la inmunidad de los cuerpos municipales. Por muchos años los tribunales sostuvieron que cuando el municipio actuaba eminentemente en una función pública, no respondía por los actos negligentes o culposos de sus agentes o empleados. Si, por el contrario, su función era más bien comercial, es decir, una función por la que el municipio se resarcía, entonces no le cobijaba inmunidad alguna y respondía por los daños ocasionados en el descargo de tal función. Véase, *e.g.*, *Whitney* v. *City of Worcester*, 366 N.E.2d 1210, 1213–1217 (1977).

La doctrina de la inmunidad del soberano, de que es secuela la limitación de responsabilidad de los municipios, y que durante siglos sirvió de palio a los propios estados de la unión, ha sido objeto de fuertes ataques que la estremecen. Razones de lógica y sentido de justicia socavan sus cimientos, al punto de que dicha doctrina es hoy día un espécimen en peligro de extinción. Véase, R. Elfren Bernier, *¿Es inconstitucional en Puerto Rico la doctrina de inmunidad del Estado?*, 43 Rev. Col. Abo. P.R. 651 (1982).

Como consecuencia de lo anterior, los tribunales de justicia, que habían erigido sobre la inmunidad del soberano una teoría sobre inmunidad del órgano corporativo municipal, comenzaron del mismo modo a abandonar sus anteriores puntos de vista sobre la cuestión. Más aún, muchos tribunales se apartaron de las ortodoxas clasificaciones de

las actividades corporativas y en una actitud nueva frente al viejo problema de la irresponsabilidad de las entidades gubernamentales, han declarado que ya no se justifica que los agravios de los ciudadanos queden sin reparo a base de arcaicas nociones de las ciencias políticas. *Gorrell* v. *City of Parsons*, 576 P.2d 616 (1978); *Brinkman* v. *City of Indianapolis*, 231 N.E.2d 169 (1967).

## III

El tribunal de instancia valoró en $10,000 el sufrimiento físico y mental del joven Colón Correa durante los diez días que transcurrieron desde que sufrió el accidente hasta que murió. Al responder a nuestra intimación para mostrar causa por la cual no debíamos aumentar dicha suma, el municipio se limita a citar la norma de abstención, que hemos reconocido jurisprudencialmente, para no intervenir con la apreciación del tribunal sentenciador en la fijación de indemnización por daños.

■ Ciertamente, nos merece gran deferencia la discreción que ejercitan los tribunales de instancia en su apreciación de daños. *Maldonado* v. *Interamerican University*, 104 D.P.R. 420, 423 (1975). Ello es así porque en el área del Derecho que se refiere a la estimación del sufrimiento humano, algo tan inasible y a veces ajeno a nuestra experiencia cotidiana, no existen tablas o escalas mediante las cuales se pueda computar aritméticamente el grado de angustia y sufrimiento que es necesario traducir a dólares y centavos. *Alvelo* v. *Insurance Co. of P.R.*, 101 D.P.R. 486, 488 (1973). No obstante, no hemos vacilado en modificar la cuantía de daños cuando se ha demostrado que ésta es a todas luces irrazonable. Así, hemos aumentado la cuantía de daños en ocasiones —*e.g.*, *Maldonado*, supra; *Moa* v. *E.L.A.*, 100 D.P.R. 573 (1972); *Gallart* v. *P.R. Telephone Co.*, 100 D.P.R. 128 (1971); *Vda. de Silva* v. *Auxilio Mutuo*, 100 D.P.R. 30 (1971); y *Levy* v. *Caribe Hilton Hotel*, 98 D.P.R.

721 (1970)— y en otras ocasiones, la hemos disminuido. *E.g.*, *Urrutia* v. *A.A.A.*, 103 D.P.R. 643 (1975).

■ En las circunstancias de este caso, es difícil concurrir con la estimación que hizo el tribunal de instancia. En *Vda. de Delgado* v. *Boston Ins. Co.*, 101 D.P.R. 598, 607 (1973), concedimos $15,000 por los sufrimientos que el causante tuvo por espacio de 3 días antes de morir. Aunque en *Vda. de Delgado* las lesiones fueron de distinta naturaleza (quemaduras en tres cuartas partes del cuerpo), en el caso de autos las lesiones fueron tan severas, extensas y dolorosas, y el lapso en que el causante las soportó consciente, tan prolongado, que ameritan que nos apartemos de la norma de no intervenir con la apreciación del daño, que hizo el tribunal de instancia, y aumentemos a $25,000 la compensación en este renglón.

## IV

Plantea el municipio en su comparecencia, como última cuestión, que de resolverse que el municipio debe responder más allá de los límites del Art. 96-A y aumentarse la indemnización a concederse, debe hacerse responsable de la totalidad de la sentencia a su aseguradora, no obstante los límites de su póliza. Se ampara en lo resuelto en *Morales* v. *Automatic Vending Service, Inc.*, 103 D.P.R. 281 (1975). Nos dice:

> En el caso de autos, al igual que en el caso de Juanita Morales, supra, la aseguradora del aquí compareciente municipio de Guayama, conocía desde el comienzo del pleito, que le sería imposible prevalecer sobre los demandantes; y, aún así, fue crasamente temeraria y negligente para con su asegurado, al litigar el caso, dilatando injustificadamente los procedimientos y negándose a transigir el caso dentro de los límites de la póliza; según se desprende de la sentencia dictada por el Tribunal de Instancia, específicamente en sus páginas 11 (último párrafo) y 18 (primer párrafo).

■ Del expediente ante nos no surgen hechos como los que justificaron en *Morales* responsabilizar a la asegura-

dora más allá de los límites de la póliza. En *Morales* la aseguradora rechazó una oferta de transacción que estaba dentro de los límites de la póliza, desoyendo la posición del asegurado, en un caso claro de responsabilidad. Aquí, si bien el tribunal de instancia reconoció la temeridad de la aseguradora al no consignar el límite de su póliza y litigar el caso, no obstante la evidente responsabilidad por el accidente, no hizo determinación alguna sobre rechazo de oferta de transacción. Por otro lado, es de tomarse en consideración que la vigencia del Art. 96-A de la Ley Municipal protegía la responsabilidad del municipio dentro de los límites del seguro. No tenemos suficientes elementos de juicio para tomar la determinación que nos pide el municipio.

### Conclusión

Por los fundamentos expresados en la presente opinión, *se declara inconstitucional el Art. 96-A de la Ley Municipal de 1966 (21 L.P.R.A. sec. 1603(a)); se expedirá el auto de revisión solicitado, y se dictará sentencia para aumentar a $25,000 la partida por concepto de daños por los sufrimientos y angustias del joven Colón Correa. Se devolverá el caso a instancia para ulteriores procedimientos compatibles con lo aquí resuelto.*

El Juez Asociado Señor Díaz Cruz se inhibió.