González Román, Juez Ponente
*1225 TEXTO COMPLETO DE LA SENTENCIA
Corresponde a esta Curia determinar si unos dividendos corporativos por la suma de $4,000,000 recibidos por Pepsi Cola Puerto Rico Bottling Co., en lo sucesivo "Pepsi", de una corporación subsidiaria, organizada en los Estados Unidos y operada en Argentina, S. A., constituyen parte del volumen de sus negocios a la luz de las enmiendas realizadas a la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. see. 651, et seq., según enmendada). Además, nos corresponde resolver si el Tribunal de Primera Instancia actuó con jurisdicción al revisar la deficiencia por Patentes Municipales que fuere notificada a Pepsi y si actuó correctamente al determinar que los fondos recibidos por Pepsi, por concepto de unos dividendos, forman parte del volumen de negocios de dicha parte para los efectos de la Ley de Patentes Municipales, supra.
Los hechos que dieron margen a la presente acción se remontan al año 1989. Pepsi, corporación organizada bajo las leyes del Estado de Delaware y autorizada para hacer negocios en Puerto Rico, adquirió en ese año la totalidad de las acciones de una corporación organizada bajo las leyes de Delaware, E.E.U.U., la cual conduce negocios en Argentina. Esta corporación, de nombre Pet Acquisition Corporation, en adelante "Pet", se dedica a hacer negocios única y exclusivamente en Argentina. Los fondos utilizados por Pepsi se adquirieron de fondos provenientes de una emisión de acciones realizada en los mercados de valores de Argentina y Estados Unidos. El precio acordado por dichas acciones fue pagado en su totalidad en el año 1992.
Para dicho año Pet declaró y pagó dividendos por la suma de $40,000,000 a favor de Pepsi por las utilidades y beneficios resultantes de sus operaciones en Argentina. Para el año fiscal 1993-94, Pepsi presentó al Municipio de San Juan, en adelante, "el Municipio", su declaración de volumen de negocios derivado de las operaciones de su oficina en San Juan, excluyendo el volumen de los dividendos distribuido por Pet.
El Municipio, en virtud de los poderes que le confiere la Ley de Patentes Municipales, supra, le notificó a Pepsi una deficiencia en el pago de sus patentes por la suma de CIENTO CUARENTA'Y CINCO MIL CIENTO CINCUENTA Y DOS DOLARES CON CINCUENTA CENTAVOS ($145,152.50) correspondiente al año económico de 1993-94. El Municipio basó la deficiencia contributiva en los dividendos antes referidos, los cuales fueron excluidos de la declaración de volumen de negocios que recibió Pepsi de Pet. El Municipio sostiene que dichos dividendos debieron incluirse en la declaración de volumen de negocios para el año económico 1993-94 y que, como tal, son tributables toda vez que éstos surgen de los Estados Financieros presentados por Pepsi, conjuntamente con la planilla sobre volumen de negocios.
Pepsi se opuso a la notificación de la deficiencia y solicitó la celebración de una vista administrativa a tenor con la sección 16 de la Ley de Patentes Municipales, supra. La vista se celebró el 13 de enero de 1995 y el 15 del mismo mes el Municipio de San Juan cursó al Sr. Charles Beach, Presidente de Pepsi, una notificación final de deficiencia. El 20 de mayo de 1995, el Municipio cursó al Sr. Beach una notificación y requerimiento de pago. Ninguna de estas notificaciones fueron *1226 enviadas al representante legal de Pepsi, no obstante éste haber comparecido a la vista administrativa como su abogado.
Posteriormente, el representante legal de Pepsi solicitó nuevamente la cancelación de la deficiencia preliminar. En carta del 8 de julio de 1995, la cual fue depositada en el correo el día 13 siguiente, el Municipio le informó al representante legal de Pepsi sobre la notificación final y requerimiento de pago que se habían dirigido directamente al presidente de dicha corporación. Este contestó la misiva solicitándole al Municipio que expidiera una nueva determinación final de deficiencia y que la misma fuera notificada a los abogados de récord de Pepsi. No obstante, el Municipio se negó a lo solicitado.
A los fines de impugnar la notificación de deficiencia contributiva, el 11 de agosto de 1995, Pepsi afianzó para garantizar su pago y presentó demanda contra el Municipio, el Honorable Héctor Luis Acevedo, alcalde de dicha municipalidad, y el señor José A. Valenzuela Fuentes, Director de Finanzas del Municipio. Luego que las partes completaron el descubrimiento de prueba, presentaron sendas mociones para que se dictara sentencia sumaria a favor de cada una respectivamente. El 5 de abril de 1995, el Tribunal de Primera Instancia emitió sentencia a favor de Pepsi declarando con lugar la demanda y anulando la deficiencia notificada. Inconforme con el resultado, el Municipio recurre mediante escrito de apelación.
En su escrito, el Municipio señala tres instancias en las cuales el tribunal apelado incidió en error. En primer lugar, indica que el Tribunal de Primera Instancia carecía de jurisdicción para entender la demanda presentada por Pepsi. En segundo lugar, sostiene que el tribunal erró al concluir que los dividendos recibidos por Pepsi a través de su subsidiaria no forman parte del volumen de negocios atribuible a la operación llevada a cabo en el Municipio. Señala, como último error, el no considerar los estados financieros de Pepsi que revelan que el dividendo recibido de su subsidiaria es atribuible a la operación llevada a cabo en el Municipio para propósitos de la Ley de Patentes Municipales, supra.
Analizados los señalamientos de ambas partes, tanto en sus respectivos alegatos como en la vista oral celebrada ante este tribunal el día 11 de junio de 1995, así como los autos, el alcance de la Ley de Patentes Municipales, supra, las enmiendas a dicha ley y su jurisprudencia interpretativa, estamos en posición de resolver. Procede confirmar la sentencia apelada. Veamos.
En cuanto al primer señalamiento de error, resolvemos que éste no se cometió. El término para solicitar revisión judicial de la determinación final de deficiencia de pago de patentes municipales en Ja que ha intervenido un abogado en representación de una parte, comienza a decursar en el momento que dicho representante legal es notificado de la misma.
La Ley Núm. 113 de 10 de julio de 1974, según enmendada por la Ley Núm. 82 de 30 de agosto de 1991 y por la Ley Núm. 93 de 17 de noviembre de 1992, dispone, en la sección 6510. (a)(2), supra, lo siguiente:

"Cuando una persona no estuviere conforme con una determinación final de deficiencia notificádale por el Director de Finanzas en la forma provista en la cláusula (1) de esta sección, dicha persona podrá recurrir contra esa determinación ante el Tribunal Superior radicando demanda en la forma provista por ley dentro del término de treinta (30) días a partir de la fecha del depósito en el correo de la notificación de la determinación final..."

Por otra parte, la cláusula (1) de dicha sección establece que el Director de Finanzas debe notificar por correo certificado, su determinación final a la persona afectada por la decisión.
No obstante a lo anterior, reiteradamente, nuestro Tribunal Supremo ha resuelto que en la tramitación de un procedimiento administrativo, y en ausencia de disposiciones específicas, son las normas de las Reglas de Procedimiento Civil las llamadas a guiar el curso del proceso administrativo. La Regla 67.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. Ill R. 67, establece que siempre que una parte haya comparecido representada por abogado, la notificación se hará al abogado, a menos que el tribunal ordene que la notificación se haga a la parte misma. Entendemos que resulta indispensable y necesario al debido proceso de ley, la notificación de cualquier trámite al abogado, pues sobre éste recae la responsabilidad de salvaguardar los remedios que tenga disponible su cliente. *1227 Rodríguez Febo v. F.S.E., 116 D.P.R. 31 (1984); Pueblo v. Hernández Maldonado, 130 D.P.R._, 91 JT.S. 93. Sólo por excepción expresamente autorizada, y aún así con renuencia, puede aceptarse como suficiente la notificación a una parte-ignorando a su abogado. Berríos v. Comisión de Minería, 102 D.P.R. 228 (1974); Santiago Dávila v. F.S.E., 113 D.P.R. 627 (1982); Arroyo Moret v. F.S.E., 113 D.P.R. 379 (1982).
Contrario a lo que argumenta el Municipio en su alegato, el Tribunal de Primera Instancia tenía jurisdicción. En el caso que nos ocupa, el Director de Finanzas notificó a Pepsi de su decisión final por conducto exclusivamente de su presidente. Conforme surge de los .autos, el Municipio tenía conocimiento que Pepsi estaba representada por el Ledo. Angel S. Ruiz Rodríguez. Dicho abogado fue quien objetó la deficiencia, solicitó la correspondiente vista administrativa y cursó varias misivas al Municipio relacionadas con dicha determinación. Ciertamente, el término para solicitar la revisión judicial de la determinación final del Municipio comenzó a decursar el 13 de julio de 1994, fecha en la cual se le notificó la determinación final al licenciado Ruiz.
Discutiremos el segundo y tercer señalamiento de.error conjuntamente, pues ambos versan en torno al alcance de la Ley de Patentes Municipales, supra, sobre los hechos del caso. Se imputa como error el haber determinado que los dividendos recibidos por Pepsi forman parte del volumen de negocios de ésta en el Municipio y el negarse a considerar que los estados financieros de Pepsi son suficientes para vincular los dividendos recibidos a la operación llevada a cabo en dicho Municipio.
El Municipio reclama que los dividendos recibidos por Pepsi de una corporación subsidiaria forman parte del volumen de negocios atribuible a la operación llevada a cabo en dicho Municipio. Por el contrario, Pepsi sostiene que los dividendos no forman parte del volumen de sus negocios a los efectos de computar el pago de la patente. Entendemos que los planteamientos del Municipio no proceden. Los dividendos que pretende someter a tributación están fuera de la facultad impositiva que confiere la Ley de Patentes Municipales, supra.
Un municipio es un organismo jurídico diseñado para satisfacer las necesidades públicas propias de un conglomerado vecinal específico, pues el radio de acción del Estado es demasiado vasto para proveer servicios directos a la ciudadanía. Con la creación de los municipios el Estado puede atender, de forma mucho más satisfactoria, el bienestar social y económico de determinada área, conforme a las necesidades y urgencias particulares. Colón v. Municipio de Guayama, 114 D.P.R. 193 (1983); Vélez v. Municipio de Toa Baja, 109 D.P.R. 369 (1980).
La génesis y atributo de todo municipio es obra de la Asamblea Legislativa. La Constitución del Estado Libre Asociado confiere al Poder Legislativo la facultad de crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función y [puede] autorizarlos a crear aquellos organismos que fueren necesarios a tal fin. Sec. 1, Art. VI, Cont. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 362; Banco Popular v. Mun. de Mayaguez, 120 D.P.R. 692 (1988); American Express Co. v. Mun. de San Juan, 120 D.P.R. 339 (1988).
Los municipios carecen del poder inherente para imponer tributos. No obstante, mediante un mandato claro y expreso la Legislatura puede delegar esta facultad. Rubert v. Sancho Bonet, Tes., 58 D.P.R. 198 (1941), Las Piedras Construction v. Municipio de Dorado, 136 D.P.R._, 94 J.T.S. 3. La Ley Orgánica de los Municipios, Ley Núm. 146 de 18 de junio de 1980, 21 L.P.R.A. see. 2001 et seq., como regla general, reconoce el poder de tributación municipal dentro de sus límites territoriales y sobre materias no incompatibles con la tributación impuesta por el Estado. Bajo este esquema, la Asamblea Legislativa autorizó a las Asambleas Municipales imponer y cobrar patentes de acuerdo con las disposiciones de dicha ley a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero [y/o] a cualquier industria o negocio en los municipios del Estado Libre Asociado de Puerto Rico. Banco Popular v. Mun. de Mayaguez, supra.
Ahora bien, como el poder de tributación de los municipios es conferido por la Asamblea Legislativa, como regla general, debe ejercitarse dentro de los límites específicos de la autoridad conferida. E. McQuillin, The Law of Municipal Corporations, 3ra ed. rev., Illinois, Callaghan and Co., 1986, Vol. 16 Sec. 44.17; American Express Co. v. Mun. de San Juan, supra, pág. 345. Para ello, la *1228 Ley de Patentes Municipales, supra, requiere que toda persona sujeta al pago de la patente rinda anualmente al municipio una declaración sobre el volumen de negocios.
La referida ley define el término "volumen de negocios" de la siguiente manera:
"[V]olumen de negocios" significa los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde ésta mantenga oficinas, almácenes, sucursales, planta de manufactura, ensamblaje, extracción, lugar de construcción, o cualquier otro tipo de organización, industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios.
Esta sección también define, en un segundo párrafo, la frase "ingresos brutos" como:

"[TJotalidad de los ingresos de fuentes dentro y fuera de Puerto Rico que sean atribuibles a la operación que se lleva a cabo en cada municipio, excluyendo todos los ingresos, tales como interés y dividendos provenientes de la inversión por un individuo de sus propios fondos, de la posesión de acciones corporativas u otros instrumentos de inversión."

Por último, la sección 651 a (15) concibe la frase "atribuibles a la operación" como:

"la totalidad de ingresos derivados dentro y fuera de Puerto Rico que reciba o devengue una persona relacionada con la explotación de una industria o negocio en Puerto Rico, tales como, pero no limitado a intereses sobre inversiones, pagarés u otras obligaciones excluyendo los intereses exentos según definido en la see. 65Ih de este título, así como los dividendos o beneficios por dicha persona."

El Tribunal Supremo estableció que los dividendos recibidos por una corporación, provenientes de una fuente no vinculada con sus negocios en el Municipio, no forman parte del volumen de negocios de ésta al momento de calcularse la patente. Coca Cola v. Municipio de Carolina, 137 D.P.R._, 94 J.T.S. 79. Por consiguiente, el factor determinante es que la persona, natural o jurídica, genere el ingreso por las gestiones llevadas a cabo en el municipio. Si el dividendo corporativo está desvinculado de la operación de la corporación en el Municipio, no procede su inclusión en el volumen de negocios.
El caso de Coca Cola, supra, adjudicado al amparo de la legislación anterior, sigue teniendo vigencia y es aplicable al caso que nos ocupa. Las enmiendas del 1991 y 1992 no alteran el ratio dicidendi del caso Coca Cola, supra, y así lo expresa el Tribunal Supremo refiriéndose a su determinación sobre la exclusión de dichos dividendos del volumen de negocios. (Pág. 11997).
"Confirma este enfoque el que la Asamblea Legislativa, en aras de precisar los ingresos sujetos al pago de patentes, en las enmiendas adoptadas a la ley el 30 de agosto de 1991, definió "atribuibles a la operación", como "la totalidad de los ingresos derivados dentro y fuera de Puerto Rico que reciba o devengue una persona relacionada con la explotación de una industria o negocio en Puerto Rico, tales como, pero no limitado a intereses sobre inversiones, pagarés u otras obligaciones excluyendo los intereses exentos según definido en la see. 65lh de este título, así como los dividendos o beneficios recibidos por dicha persona. "(Enfasis suplido)
Por otro lado, la enmienda realizada el 17 de noviembre de 1992 a la Ley de Patentes Municipales, supra, tampoco altera la referida decisión. La enmienda precisa la clase de ingresos que son incluibles en la definición de ingreso bruto al propio texto de la ley utilizando el mismo criterio rector de la definición provista por el Art. 2 (7)(A) del Reglamento sobre Patentes Municipales, Reglamento Núm. 31, aprobado por el Secretario de Hacienda el 10 de agosto de 1984. Los ingresos, antes y despúes de la enmienda, quedan atados al requisito que deben ser atribuibles a la operación que se lleva a cabo en cada Municipio para quedar sujetos al palio contributivo.
El Municipio no logró controvertir que los dividendos declarados y pagados a favor de Pepsi *1229 fueran producto de las operaciones de Pet realizadas en Argentina. Tampoco estableció nexo alguno que vinculen las operaciones de Pepsi en Puerto Rico con los dividendos generados por dicha corporación subsidiaria en negocios realizados exclusivamente en dicho país sudamericano. En vista de ello, los dividendos objeto de esta controversia no forman parte del volumen de negocio de Pepsi y estos dividendos se hubiesen generado independientemente de las gestiones realizadas en el Municipio.
En cuanto a la alegación del Municipio en tomo a los estados financieros de Pepsi, no nos convence. Adoptamos las palabras del Tribunal Supremo en el caso Coca Cola supra, pág. 11997: "La facultad municipal de imponer patentes no es documental, sino sustantiva; no depende de que se incluya o no el ingreso en determinado estado financiero." Ello responde a que los estados financieros no son preparados para determinar el pago de ingresos tributables sino para proveer una visión global de las finanzas de la entidad concernida. Tampoco pueden, por sí solas, utilizarse para determinar el alcance de la actividad tributable de una corporación.
Tomando en consideración las disposiciones legales mencionadas en esta sentencia, concluimos que el recibo de dividendos corporativos de una subsidiaria a su corporación matriz ciertamente no constituye ingresos percibidos por la prestación de un servicio, por la venta de bienes o por la operación de una industria o negocio en un municipio. Tampoco son ingresos adicionales como intereses o dividendos atribuibles a la operación de tal industria o negocio, por lo que dichos activos están exentos del pago de patentes municipales.
Si bien es cierto que la Ley de Patentes Municipales concede una amplia facultad impositiva a los municipios de manera que éstos puedan proveer más servicios directos a la ciudadanía, no podemos extender dicha facultad más allá de la operación que efectúa el contribuyente en cada municipio.
Hacerlo, conllevaría rebasar los límites de la autoridad conferida, someter a la jurisdicción impositiva del municipio ingresos que la Legislatura no pretendió que fuesen objeto de tributo y ampliar el poder contributivo al extremo de desarticular el efecto práctico de la contribución y de las realidades económicas envueltas.
No habiéndose cometido los errores señalados, se confirma la sentencia apelada.
REGISTRESE y NOTIFIQUESE.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIO 95 DTA 313
1. Abogado del Bufete Martínez, Odell & Calabria.