Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| HOMAR TORRES PABÓN H/N/C PAPI JOE<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurrido | KLRA202400168 | REVISIÓN JUDICIAL procedente de la Oficina de Permisos, Municipio Autónomo de San Juan<br><br>Caso núm.: 23OP-63829QU-VSJ<br><br>Sobre: Reconsideración Multa Boleto |
|---|---|---|

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 17 de julio de 2024.

Comparece ante este tribunal apelativo, el Sr. Homar Torres Pabón h/n/c Papi Joe (el recurrente) mediante el recurso de revisión de epígrafe solicitándonos que revoquemos la *Resolución sobre Solicitud de Reconsideración a Multa Administrativa* emitida por la Oficina de Permisos del Municipio Autónomo de San Juan (Oficina de Permisos o la recurrida) el 29 de febrero de 2024, archivada en autos ese mismo día. Mediante este dictamen, el foro revisado declaró *No Ha Lugar* a la reconsideración de la multa de $2,000 solicitada por el recurrente.

Por los fundamentos que expondremos a continuación, procede revocar el dictamen recurrido y dejar sin efecto la Multa Administrativa, Boleto Núm. 002970.

### I.

El 22 de septiembre de 2023, a las 9:51 de la noche, personal de la Oficina de Permisos del Municipio de San Juan, realizó un "operativo nocturno" e intervino con el negocio *Papi Joe* ubicado en la Calle Plaza de Mercado, Barrio San Juan Antiguo del Municipio de San Juan. De esta, el inspector determinó que la operación del

negocio estaba en violación a los Artículos 1.3, 9.12(a) y 14.13(a) de la Ley núm. 161-2009 conocida como *Ley para la Reforma del Proceso de Permisos de Puerto* Rico, *infra*, y expidió una multa administrativa (el Boleto Núm. 002970) por $2,000.

En lo aquí pertinente, dicho boleto contiene un área intitulada *Comentarios*, en la cual el Sr. William Torruellas Díaz, Inspector, especificó: "Opera Barra como uso principal." Además, en el acápite de *Faltas Administrativas* se marcó el encasillado que lee: "Opera un uso distinto al autorizado u otorgado" con la *Definición* de: "Se constituye cuando se está operando un uso que no es el que se describe en el permiso emitido para la propiedad."[1]

A su vez, al dorso del boleto se dispone lo siguiente:

**"PAGO DE LA MULTA**
Esta multa deberá pagarse dentro de los veinte (20) días mediante pago en efectivo, cheque certificado o giro postal a nombre del Municipio Autónomo de San Juan, no se permitirán cheques personales, o enviando el mismo al Departamento de Finanzas, PO Box 70179, San Juan, PR 00936 o entregando el mismo en el Departamento de Finanzas en la Torre Municipal de San Juan o en nuestra Oficina. Cuando no se cumpla el pago se acumularán intereses sobre la cuantía impuesta hasta que esta sea satisfecha, al tipo de interés para sentencias judiciales de naturaleza civil que esté en vigor al momento de iniciarse el procedimiento.

**RECONSIDERACIÓN DE MULTA**
La parte adversamente afectada por una multa podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de esta, presentar una moción de reconsideración de la misma. La Oficina de Permisos ("OP") dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término Jurisdiccional de treinta (30) días para solicitar revisión ante el Tribunal de Apelaciones empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la OP resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro

---

[1] Véase, Apéndice del Recurso, a la pág. 8.

de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término de treinta (30) días para solicitar la revisión judicial ante el Tribunal de Apelaciones empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales."[2]

**CONSTITUCIÓN DE GRAVAMEN SOBRE LA PROPIEDAD, PROHIBICIÓN DE SERVICIOS**

Una vez una multa advenga final y firme esta constituirá un gravamen sobre la propiedad hasta tanto no sea satisfecho el monto total de la misma. El Municipio Autónomo de San Juan no emitirá permiso, licencia, autorización, determinación final ni certificación de una propiedad que tenga una deuda por concepto de una multa final y firme hasta que ésta sea pagada o se presente un plan de pago aceptado por el Municipio."

Luego de emitido el Boleto Núm. 002970, el **25 de septiembre de 2023,** la Oficina de Permisos presentó la **querella Núm. 23OP-63829QU-VSJ**. El 27 de septiembre siguiente, el Ing. Víctor A. Joglar Díaz, Oficial de Permisos, le remitió una carta al recurrente en la que le informó la referida violación al Permiso Único aprobado para el negocio *Papi Joe.*[3] Además, se le advirtió que, "conforme a las instrucciones al dorso del boleto", en el término de diez (10) días debía "presentar evidencia sobre la legalidad de las violaciones señaladas."[4]

El 10 de octubre de 2023, el recurrente solicitó la *reconsideración* de la multa ante la Oficina de Permisos del Municipio de San Juan, por no estar de acuerdo con ella. Al día siguiente, la referida oficina determinó que la misma fue instada en tiempo.

El 30 de octubre siguiente, se le comunicó al recurrente que la misma fue acogida y se le remitió *Citación a Vista Administrativa* para el 16 de noviembre de 2023. Destacamos que en el referido documento intitulado *Citación a Vista Administrativa* se determinó

---

[2] Véase, Anejo de la *Moción en Cumplimiento de Resolución*, presentada por el Municipio de San Juan.

[3] Véase, copia original del Expediente Administrativo.

[4] *Íd.*

que el recurrente "cumplió con el término jurisdiccional de presentación ... dispuesto por la Sección 11.5.1.1 del Reglamento Conjunto 2023." También advirtió que "[l]os procesos se regirán conforme al Capítulo 11.6 del Reglamento Conjunto de 2023."

La vista administrativa finalmente se celebró el 9 de enero de 2024 en las Oficinas de Permisos del Municipio. Surge del *Informe de la Oficial Examinadora,* suscrito por la Lcda. Rosemary Borges-Capo el 26 de febrero de 2024, que a la misma asistió el Inspector William Torruellas de la Oficina de Permisos, el Sr. Víctor Rivera (Gestor del recurrente), el Sr. Kevin Santiago (Gerente del Negocio) y el recurrente (dueño del negocio), y su representación legal. En dicho informe, la Oficial Examinadora esbozó dieciséis (16) determinaciones de hechos, y concluyó que el recurrente no presentó evidencia para sustentar sus argumentos ni pudo refutar el *Informe de Investigación*. Por ende, recomendó declarar *No Ha Lugar* a la reconsideración solicitada por el recurrente.

El 29 de febrero de 2024, notificada ese mismo día, la Oficina de Permisos emitió la *Resolución sobre Solicitud de Reconsideración a Multa Administrativa* impugnada en la cual acogió el antedicho informe. En consecuencia, declaró *No Ha Lugar* a la reconsideración. En la referida Resolución se incluyó el siguiente **Apercibimiento:**

> Una parte adversamente afectada por una orden o resolución final del Municipio Autónomo de San Juan y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15, 3 L.P.R.A. § 9655 supra, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" [Ley 38-2017, según enmendada], cuando el término para solicitar revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión, la notificación podrá hacerse por correo. Disponiéndose, que, si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia

o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

Todavía en desacuerdo, el recurrente acude ante esta *Curia* mediante el recurso de revisión de epígrafe imputándole al foro recurrido haber incurrido en los siguientes errores:

> **PRIMER ERROR**: ERRÓ EL MUNICIPIO AUTÓNOMO DE SAN JUAN, AL DICTAR LA RESOLUCIÓN EN RELACIÓN CON UNA MULTA IMPUESTA, A TENOR CON LA LEY NÚM. 161 DE 1 DE DICIEMBRE DE 2009, SEGÚN ENMENDADA, CONOCIDA COMO LA LEY PARA LA REFORMA DEL PROCESO DE PERMISOS DE PUERTO RICO", SIN TOMAR EN CONSIDERACIÓN, Y DARLE EL PESO Y LA CREDIBILIDAD QUE AMERITA, LA PRUEBA DOCUMENTAL Y TESTIFICAL PRESENTADA POR LA RECURRENTE, AL IGUAL QUE EL PROPIO TESTIMONIO DEL INSPECTOR DEL MUNICIPIO.
>
> **SEGUNDO ERROR**: ERRÓ EL MUNICIPIO AUTÓNOMO DE SAN JUAN, AL DICTAR LA RESOLUCIÓN EN RELACIÓN CON UNA MULTA IMPUESTA, A TENOR CON LA LEY NÚM. 161 DE 1 DE DICIEMBRE DE 2009, SEGÚN ENMENDADA, CONOCIDA COMO LA LEY PARA LA REFORMA DEL PROCESO DE PERMISOS DE PUERTO RICO", SIN TOMAR EN CONSIDERACIÓN LAS PARTICULARIDADES DEL MOMENTO EN QUE OCURRE LA INTERVENCIÓN, ENTIÉNDASE HORA Y DÍA DE LA SEMANA.
>
> **TERCER ERROR**: ERRÓ EL MUNICIPIO AUTÓNOMO DE SAN JUAN, AL DICTAR LA RESOLUCIÓN EN RELACIÓN CON UNA MULTA IMPUESTA, A TENOR CON LA LEY NÚM. 161 DE 1 DE DICIEMBRE DE 2009, SEGÚN ENMENDADA, CONOCIDA COMO LA LEY PARA LA REFORMA DEL PROCESO DE PERMISOS DE PUERTO RICO", SIN TOMAR EN CONSIDERACIÓN LA REALIDAD DE QUE LA INTERVENCIÓN SOLO CONTEMPLA UN MOMENTO EN ESPECÍFICO, QUE DURA ESCASOS MINUTOS, Y SOBRE EL CUAL EL INSPECTOR DESCANSA PARA EMITIR LA MULTA.
>
> **CUARTO ERROR**: ERRÓ EL MUNICIPIO AUTÓNOMO DE SAN JUAN, AL DICTAR LA RESOLUCIÓN EN RELACIÓN CON UNA MULTA IMPUESTA, A TENOR CON LA LEY NÚM. 161 DE 1 DE DICIEMBRE DE 2009, SEGÚN ENMENDADA, CONOCIDA COMO LA LEY PARA LA REFORMA DEL PROCESO DE PERMISOS DE PUERTO RICO", Y LA CUAL CLARAMENTE VIOLA EL DERECHO CONSTITUCIONAL DEL APELANTE AL DEBIDO PROCESO DE LEY.

El 4 de abril de 2024, emitimos una *Resolución* concediendo término a la parte recurrida para expresarse, pero ante la solicitud del recurrente para presentar la transcripción de la prueba oral (TPO) vertida en la vista administrativa, otorgamos término para

ello, y su estipulación, así como para la posterior presentación de los correspondientes alegatos.

El 29 de abril de 2024, emitimos otra *Resolución* ordenando a la Oficina de Permisos del Municipio elevar ante nuestra consideración copia certificada del expediente, dentro del término de cinco (5) días. El 2 de mayo de 2024 se cumplió con lo ordenado.

Luego de varios tramites procesales ante este foro apelativo, el 14 de junio de 2024, dictamos una *Resolución* en la cual declaramos *No Ha Lugar* a la solicitud de desestimación de la recurrida y determinamos atender el recurso sin la presentación de la TPO. Además, concedimos a la parte recurrida el término de 20 días para presentar su oposición argumentando solamente el cuarto error, por entenderse que para su atención no es necesaria la TPO. El 8 de julio siguiente, la parte recurrida presentó su *Alegato en Oposición …* por lo cual, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

### *El debido proceso de ley*

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley." Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Al amparo del debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este

análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. R*omán Ortiz v. OGPe*, 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Lee Stowell Etc.*, 133 DPR 881 (1993); *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562 (1992). Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell Taylor Etc.*, supra.

Se ha señalado que para que entre en vigor la protección que ofrece este derecho en su vertiente procesal tiene que estar en juego **un interés individual de libertad o propiedad**. *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 274 (1987). Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Íd.* Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. *Íd.*

La jurisprudencia ha establecido diversos requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso, a saber: (1) **notificación adecuada del proceso**; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell Taylor Etc.*, supra.

Sabido es que la notificación de las resoluciones administrativas brinda a las partes la oportunidad de advenir en conocimiento de la determinación de la agencia y otorga a las personas cuyos derechos pudieran quedar afectados la oportunidad

para decidir si ejercen los remedios que les reserva la ley para impugnar dicha determinación. *Asoc. Vec. Altamesa Este v. Mun. San Juan*, 140 DPR 24 (1996). La falta de una notificación adecuada puede impedir que las partes procuren los remedios que tienen a su disposición, enervando con ello las garantías del debido proceso de ley. *Río Const. Corp. v. Mun. de Caguas*, 155 DPR 394 (2001); *Mun. de Caguas v. AT&T*, 154 DPR 401 (2001). Es decir, el deber de notificar a las partes una determinación administrativa de manera adecuada y completa no constituye un mero requisito. *Río Const. Corp. v. Mun. de Caguas*, supra. Una notificación insuficiente puede traer consigo **consecuencias adversas a la sana administración de la justicia, además de que puede demorar innecesariamente los procedimientos administrativos** y, posteriormente, los judiciales. *Olivo v. Srio. de Hacienda*, 164 DPR 165 (2005). Dicha notificación y apercibimiento presupone que se informe correctamente sobre los términos y condiciones para el ejercicio de tales derechos. *Carabarín et al. v. A.R.P.E.*, 132 DPR 938 (1993). Es decir, constituye un "requisito indefectible la adecuada notificación de cualquier determinación de una agencia que afecte los intereses propietarios de un ciudadano". *Picorelli López v. Depto. de Hacienda*, 179 DPR 720 (2010).

De otra parte, como es sabido en el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009). Esto obedece en gran medida a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. *Báez Díaz v. E.L.A.*, 179 DPR 605, 623 (2010). Sin embargo, se ha reiterado que el procedimiento adjudicativo administrativo **debe de ser justo en todas sus etapas y tiene que**

**ceñirse a las garantías mínimas del debido proceso de ley**, conforme al interés involucrado y a la naturaleza del procedimiento que se trate. *Álamo Romero v. Adm. de Corrección*, supra, a la pág. 330; *López Vives v. Policía de P.R.*, 118 DPR 219, 231 (1987).

### *La Ley núm. 161 de 1 de diciembre de 2009, según enmendada, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico", 23 LPRA sec. 9011 et seq.*

La Ley núm. 161-2009 se aprobó a los fines de establecer el marco legal y administrativo que rige el proceso de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. Mediante esta ley, se adoptó como política pública:

> "[E]l mejorar la calidad y eficiencia en la administración de los procesos de evaluación de solicitudes para el otorgamiento, autorización o denegación de licencias, inspecciones, querellas, certificaciones, consultas, autorizaciones y cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico, así como determinaciones finales y permisos para desarrollos de proyectos de construcción." Artículo 1.2 de la Ley núm. 161-2009.

En cuanto a su *alcance*, el Artículo 1.3 de la Ley núm. 161-2009, dispone lo siguiente:

> "Las disposiciones de esta Ley serán de aplicación a toda persona, natural o jurídica que solicite o interese solicitar: (a) determinaciones finales y permisos para proyectos de construcción y usos de terrenos y certificaciones en Puerto Rico; (b) licencias, permisos, certificaciones o documentos de agencias o entidades gubernamentales requeridos para la tramitación y expedición de licencias o permisos para realizar u operar negocios en Puerto Rico, tales como, pero sin limitarse a: certificaciones de deudas, certificados de antecedentes penales, certificados de existencia o de autorización para hacer negocios en Puerto Rico y certificados de cumplimiento ("Good Standing"), y cualesquiera otras requeridas por las agencias concernidas. Sujeto a lo dispuesto en el Artículo 18.10, las disposiciones de esta Ley donde así se establezca, **aplicarán a aquellos Municipios que, a la fecha de aprobación de esta Ley, hayan obtenido un convenio de delegación**." [Énfasis nuestro]

La Ley núm. 161-2009 en unión con el Reglamento Conjunto de Permisos aplicable,[5] regulan el proceso de solicitud, evaluación,

---

[5] En *Martínez Fernández et. al. v. OGPe*, 2023 TSPR 75, 212 DPR ___ (2023), el Tribunal Supremo decretó que el Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020 eran nulos. Sin embargo, estableció que: "**[E]sta determinación de nulidad tendrá efecto prospectivo a partir de la certificación de esta Opinión**. De este modo, todo permiso que haya sido

concesión y denegación del "Permiso Único". Este es, el "[p]ermiso para el inicio o continuación de la operación de un negocio, construcción y/o actividad incidental al mismo en el que se consolida permisos, licencias, autorizaciones o certificaciones". Artículo 1.5 inciso (59A) de la Ley núm. 161-2009, 23 LPRA sec. 9011. El mismo, es "expedido por la Oficina de Gerencia de Permisos, o los Municipios Autónomos con Jerarquía de la I a la V" conforme a lo dispuesto en el Capítulo VIII de la referida ley. *Íd.*

El inciso (a) del Artículo 9.12*, supra*, 23 LPRA sec. 9019k, establece que a partir de la vigencia de esta ley: "(a) **Todo uso**, construcción, reconstrucción, alteración, demolición, traslado de edificios en Puerto Rico, instalación de facilidades, subdivisión, desarrollo, urbanización de terrenos, **será previamente aprobado y autorizado por la Oficina de Gerencia, Municipios Autónomos** con jerarquía de la I a la V o por un Profesional Autorizado, según aplique, en cumplimiento con las disposiciones legales aplicables." [Énfasis nuestro].

Así también, el inciso (a) del Artículo 14.13 de la Ley núm. 161-2009, 23 LPRA sec. 9024L, establece que estas entidades tienen a su vez la facultad de expedir multas administrativas a cualquier persona, natural o jurídica, que, entre otros, lleve a cabo lo siguiente:

> (a) **Infrinja esta Ley**, la Ley Núm. 75 del 24 de junio de 1975, según enmendada, conocida como "Ley Orgánica de la Junta de Planificación", el Reglamento Conjunto, los permisos o las condiciones de los permisos expedidos al amparo de la misma, los Reglamentos de Planificación o cualquier otra ley aplicable. Las multas administrativas **no excederán** de cincuenta mil (50,000) dólares por cada infracción, entendiéndose que cada día que subsista la infracción se considerará como una violación independiente. [Énfasis nuestro]

---

autorizado y expedido al amparo de los referidos reglamentos, previo a la emisión de este pronunciamiento, **deberá ser aceptado como legal por toda la ciudadanía.**" Además, "[l]as solicitudes de permisos pendientes de adjudicación y en las cuales se hayan celebrado o señalado vista adjudicativa se podrán continuar tramitando al amparo del reglamento conjunto aplicable."

Por otra parte, en virtud del Artículo 14.5 inciso (h) de la Ley núm. 161-2009, 23 LPRA sec. 9024d, los Municipios Autónomos con Jerarquía de la I a la V tienen facultad para:

> "... **imponer multas** cuando de su auditoría o en el ejercicio de sus funciones, advenga en conocimiento de violaciones a las disposiciones de cualquiera de las leyes aplicables o los reglamentos que se adopten al amparo de la misma. A esos efectos, **mediante el Reglamento Conjunto** se establecerán los requisitos y parámetros para la imposición; ..." [Énfasis nuestro]

En relación a la presentación de la querella el Artículo 14.6, *supra*, 23 LPRA sec. 9024e, dispone que:

> Cualquier agencia, dependencia o instrumentalidad del Gobierno de Puerto Rico **en representación del interés público** o una persona privada, natural o jurídica, que tenga interés propietario, o que sea colindante, propietaria u ocupante de una propiedad vecina, a la cual su interés personal podría verse afectado, **podrá presentar una querella** contra una persona natural o jurídica o una entidad pública, a través del Sistema Unificado de Información alegando: (a) **el incumplimiento con las disposiciones o condiciones de los permisos expedidos**; (b) **la alegada ausencia de un permiso requerido**; o (c) el incumplimiento con cualquier disposición de la Ley 75 de 24 de junio de 1975 o esta Ley, las leyes habilitadoras de las Entidades Gubernamentales Concernidas, la Ley de Municipios Autónomos, el Reglamento Conjunto de Permisos o demás reglamentos aplicables. Bajo ningún concepto, se puede utilizar una querella para realizar un ataque colateral a una determinación final o permiso que debió haber sido presentado oportunamente de conformidad con esta Ley.

De otro lado, el estatuto preceptúa que la Junta de Planificación; así como el Municipio Autónomo con Jerarquía de la I a la V o la Entidad Gubernamental Concernida, según corresponda, **iniciará la investigación de los hechos alegados en toda querella dentro del término de treinta (30) días naturales**, contados desde la presentación de la misma a través del Sistema Unificado de Información y notificará al querellante, dentro de dicho término, sobre las gestiones realizadas. Artículo 14.7, Ley núm. 161-2009, 23 LPRA sec. 9024f. Establece, además, que dentro del término de sesenta (60) días naturales desde la presentación de la querella, (la Junta de Planificación, los Municipios Autónomos con

Jerarquía de la I a la V o la Entidad Gubernamental Concernida), **emitirá sus hallazgos o recomendaciones** y procederá, de entenderlo necesario, conforme a lo dispuesto en dicha ley. *Íd.*

Asimismo, dispone que cuando se determine que no hubo incumplimiento o violación a las disposiciones legales aplicables, se ordenará el archivo de la querella presentada. *Íd.* Por el contrario, si de la investigación realizada se concluye que **las alegaciones de la querella son ciertas**, la Junta de Planificación, el Municipio Autónomo o la Entidad Gubernamental Concernida, según corresponda, **procederá a expedir una multa administrativa**. Artículo 14.8 inciso (a), *supra*, 23 LPRA sec. 9024g. En el Reglamento Conjunto de Permisos **se establecerán los parámetros para determinar las cuantías de las multas administrativas**, tomando en consideración la severidad de la violación, el término por el cual se extendió la violación, reincidencia, el beneficio económico derivado de la comisión de la violación y el riesgo o los daños causados a la salud o a la seguridad como resultado de la violación. *Íd.*, inciso (b).

En cuanto a los procedimientos para la expedición, cobro y revisión de multas, el Artículo 14.10 de la Ley núm. 161-2009, 23 LPRA sec. 9024i, establece en sus incisos (b), (c), y (f) que:

> b) Los formularios para dichos boletos podrán ser electrónicos, de acuerdo con el reglamento que, para dicho propósito, promulgará la Junta de Planificación. El funcionario que expida el boleto incluirá su nombre completo, lo firmará digitalmente o de su puño y letra **y expresará claramente en el mismo la falta administrativa alegada, la disposición infringida,** la fecha del boleto y el monto de la multa administrativa a pagarse.
>
> c) La Junta de Planificación, las Entidades Gubernamentales Concernidas o los Municipios Autónomos con Jerarquía de la I a la V, entregarán en persona, por correo certificado o **electrónicamente copia del boleto a la persona que esté a cargo de la propiedad, sea su dueño**, agente, empleado, encargado, cesionario, arrendatario, o causahabiente. **La copia así entregada contendrá, además, las instrucciones para solicitar un recurso de reconsideración y revisión**. En el Reglamento Conjunto se dispondrán los mecanismos o pasos a seguir cuando no sea posible entregar copia del boleto

por no tener disponible el nombre y/o dirección del dueño, agente encargado, cesionario, arrendatario o causahabiente.

f) **La parte adversamente afectada por una multa expedida** por la Junta de Planificación, el Oficial Auditor de Permisos, la Entidad Gubernamental Concernida o por los Municipios Autónomos con Jerarquía de la I a la V, ***podrá solicitar reconsideración o revisión* según dispuesto en la Ley Núm. 170** de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme"." [Enfasis nuestro].[6]

En el presente recurso es importante destacar que, mediante la Ley núm. 161-2009, se creó la División de Revisiones Administrativas como organismo adscrito a la OGPe con la función de revisar las actuaciones y determinaciones de la Junta Adjudicativa, la Oficina de Gerencia de Permisos, los Profesionales Autorizados y los Municipios Autónomos con Jerarquía de la I a la V. Artículo 11.1, *supra*, 23 LPRA sec. 9021m. Los procedimientos a ser celebrados ante dicha División se regularán en el Reglamento Conjunto de Permisos. Artículo 11.5, *supra*, 23 LPRA sec. 9021q. Así, una parte adversamente afectada **por una actuación o determinación final** de la Oficina de Gerencia de Permisos o de los **Municipios Autónomos** con Jerarquía de la I a la V, según sea el caso, podrá presentar **una solicitud de revisión administrativa** ante la División de Revisiones Administrativas, dentro del **término jurisdiccional de veinte (20) días** contados a partir de la fecha de archivo en autos, de copia de la **notificación de la actuación o determinación final**. Artículo 11.6 inciso (a), *supra*, 23 LPRA sec. 9021r.

Puntualizamos que la presentación de una solicitud de revisión administrativa, ante la OGPe, no es un requisito jurisdiccional previo a la presentación de una solicitud de revisión de decisión administrativa ante esta *Curia*. *Íd.*, inciso (b). Presentada

---

[6] La Ley núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico"*, fue derogada y sustituida por la Ley núm. 38-2017, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 LPRA sec. 9601 *et seq.*, (LPAUG).

la solicitud de revisión administrativa, se elevará a la División de Revisiones Administrativas copia certificada del expediente del caso, dentro de los **diez (10) días** naturales siguientes a la radicación de la solicitud de revisión. *Íd.*, inciso (c).

Además, precisa apuntalar que, una vez presentada la solicitud de revisión administrativa, el Juez Administrativo tiene un término de quince <u>(15) días para determinar si acoge la misma</u>. Si en este término se denegase o no se emitiese una determinación a esos fines, en cuyo caso se entenderá rechazada de plano y comenzará a decursar el término de **treinta (30) días para recurrir ante el Tribunal de Apelaciones,** desde que se notifique la denegatoria o desde que expiren esos quince (15) días, según sea el caso. Artículo 11.8, *supra*, 23 LPRA sec. 9021t.

Por último, el estatuto dispone que la parte afectada por la determinación final tendrá un término jurisdiccional de treinta (30) días naturales para presentar su recurso de revisión de decisión administrativa ante el Tribunal de Apelaciones. Artículo 13.1, *supra*, 23 LPRA sec. 9023.

### *El Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Usos de Terrenos y Operación de Negocios, Reglamento Núm. 9473 de 16 de junio de 2023 (Reglamento Conjunto de 2023)*

El Reglamento Conjunto de 2023, vigente al momento en que se emitió la multa, aquí en controversia, establece los parámetros y procedimientos para la imposición de las multas administrativas establecidas en la Ley núm. 161-2009 basado en la severidad de la violación, término por el cual se extendió la violación, reincidencia, el beneficio económico derivado de la comisión de la violación y el riesgo o los daños causados a la salud o a la seguridad como resultado de la violación. Capítulo 11.4.1 del Reglamento Conjunto de 2023.

La Sección 11.4.1.1 del Reglamento Conjunto de 2023, (similar a los Artículos 14.8, 14.10 y 14.13 de la Ley núm. 161-2009), dispone, entre otros asuntos, que:

> a. **Si de la investigación realizada se concluye que las alegaciones de la querella son ciertas**, la JP, el Municipio Autónomo con Jerarquía de la I a la III, o la Entidad Gubernamental Concernida, según corresponda, procederá a **expedir una multa administrativa** que no exceda de cincuenta mil dólares ($50,000.00) por cada infracción, entendiéndose que cada día que subsista la infracción se considerará como una violación independiente.
> [...]
> g. La parte adversamente afectada por una multa expedida por la JP, el Oficial Auditor de Permisos, la entidad gubernamental concernida o por los **Municipios Autónomos con Jerarquía de la I a la III**, **podrá presentar una solicitud de reconsideración o revisión, según dispuesto en el Capítulo 11.5 de este Tomo.** (Énfasis nuestro)

Por su parte, la Sección 11.4.1.4 (d) del referido reglamento preceptúa que "[l]a parte adversamente afectada **por una multa expedida** por la JP, el Oficial Auditor de Permisos, la Entidad Gubernamental Concernida, o por **los Municipios Autónomos con Jerarquía de la I a la III**, **podrá <u>solicitar reconsideración o revisión según dispuesto en este Reglamento</u>**." (Énfasis nuestro)

Respecto al procedimiento de reconsideración, el Tomo XI del Reglamento Conjunto de 2023, intitulado *Revisiones, Querellas, Multas y Auditorías* dispone en el inciso (a) de la Sección 11.1.2.1 lo siguiente:

> Una **parte adversamente afectada** por una actuación o determinación final de la OGPe, de la Junta Adjudicativa, **de los Municipios Autónomos con Jerarquía de la I a la III** o de un Profesional Autorizado, podrá presentar una solicitud de revisión administrativa **ante la División de Revisiones Administrativas**, **dentro del término jurisdiccional de veinte (20) días** contados a partir de la fecha de archivo en autos, de copia de la notificación de la actuación o determinación final. [Énfasis nuestro]

En cuanto a la revisión judicial ante el tribunal de apelaciones, el inciso (a) de la Sección 11.1.2.13 dispone:

> Las resoluciones de la División de Revisiones Administrativas serán consideradas **determinaciones finales** de la OGPe. Cualquier parte adversamente afectada por una determinación final tendrá un término jurisdiccional de treinta (30) días naturales **para**

> **presentar un recurso de revisión administrativa** ante el Tribunal de Apelaciones. [Énfasis nuestro]

### *La Ley núm. 107-2020, conocida como el "Código Municipal de Puerto Rico"*

La Ley núm. 81-1991, según enmendada, conocida como "Ley de Municipios Autónomos de Puerto Rico", 21 LPRA 4001 *et seq.*, fue derogada por la Ley núm. 107-2020, según enmendada, conocida como el "Código Municipal de Puerto Rico", 21 LPRA sec. 7001 *et seq.* En el caso de autos, la multa fue expedida estando vigente el Código Municipal, el cual declara como política pública del Gobierno de Puerto Rico otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras y fiscales; así como los poderes inherentes a su subsistencia y las facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico. Artículo 1.003, Ley núm. 107-2020, 21 LPRA sec. 7003. Se reconoce la autonomía municipal en el ejercicio de sus poderes jurídicos, económicos y administrativos sobre asuntos relativos al bienestar general de sus habitantes. La autonomía municipal se ejercerá sin menoscabar los poderes y facultades de la Asamblea Legislativa. Artículo 1.007, supra, 21 LPRA sec. 7012.

Así las cosas, los municipios tienen la facultad delegada **para aprobar y poner en vigor ordenanzas** con sanciones tanto penales como administrativas. Artículo 1.009, supra, 21 LPRA sec. 7014. El referido precepto claramente dispone que:

> ... el municipio podrá imponer y cobrar multas administrativas de hasta un máximo de cinco mil (5,000) dólares por infracciones a sus ordenanzas, resoluciones y reglamentos de aplicación general, conforme se establezca por ley u ordenanza.
> El municipio deberá adoptar mediante ordenanza un procedimiento uniforme **para la imposición de multas administrativas que contenga las garantías del debido procedimiento de ley** en su vertiente sustantiva, similar al establecido en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

> En aquellos municipios **donde existan Tribunales Administrativos**, estos tendrán **jurisdicción primaria para revisar las multas administrativas aquí indicadas**. Las decisiones emitidas por los Tribunales Administrativos **podrán ser revisadas por el Tribunal de Primera Instancia**. El Tribunal de Primera Instancia tendrá jurisdicción para conocer y resolver sobre cualquier violación a las ordenanzas que incluyan sanciones penales de los municipios. En los otros casos, **el Tribunal de Primera Instancia entenderá en toda solicitud de revisión judicial** de cualquier persona **adversamente afectada** por una orden o **resolución municipal imponiendo una multa administrativa**. [Énfasis nuestro]

El Código Municipal también faculta a los municipios a crear una **Oficina de Permisos** antes de recibir **la transferencia de facultades de la Junta de Planificación o de la Oficina de Gerencia de Permisos**. Artículo 6.016, *supra*, 21 LPRA sec. 7866.

De otro lado, el Artículo 3.040 inciso (a), *supra*, 21 LPRA sec. 7491, establece que los municipios tendrán la facultad discrecional para adoptar los Códigos de Orden Público. Asimismo, y en lo aquí pertinente, el inciso (f) dispone lo siguiente:

> **Todo proceso de revisión de una multa impuesta será en el Tribunal de Primera Instancia de la región judicial en que fue impuesta**. En el caso de los municipios que tengan un Tribunal Administrativo Municipal podrán usar el mismo para el proceso de revisión de multas bajo este Capítulo, a discreción de estos. Dicho Tribunal Administrativo Municipal, deberá seguir los procedimientos establecidos en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".
> **La persona que fuera multada bajo los parámetros de este Capítulo** tendrá treinta **(30) días calendario para solicitar revisión** del mismo en el **Tribunal Administrativo Municipal o en el Tribunal de Primera Instancia** de la región judicial en que le fue impuesta la multa, según aplique.
> En el caso de que sea un comerciante bona fide del municipio del que se le haya multado y no solicite la revisión de la multa, ni pagase la misma, el municipio podrá gravar en la patente municipal del comerciante por el monto de la multa. Conforme a lo antes dispuesto, la multa deberá pagarse junto a la patente municipal del próximo año. [Énfasis nuestro]

### III.

En el presente recurso, el recurrente argumentó que el *foro administrativo municipal* cometió cuatro errores. Los primeros tres están relacionados a la apreciación de la prueba por parte de la

Oficina de Permisos. Como señalamos, la TPO no fue presentada por lo que dichos errores no pueden ser atendidos por esta *Curia*. Ahora bien, el cuarto error se refiere a las garantías mínimas que exige el debido proceso de ley en nuestro ordenamiento relativo a todo procedimiento *adjudicativo administrativo*. Por tanto, ordenamos al Municipio a expresarse únicamente en cuanto a este error.

Al respecto, el recurrente argumentó que los procedimientos para la expedición y revisión de multas administrativas no cumplen con las garantías mínimas del derecho a un debido proceso de ley en su vertiente procesal. Por otro lado, el Municipio reiteró en su oposición haber actuado en conformidad con la Ley núm. 161-2009 y el Reglamento Conjunto 2023. Apuntaló que del propio boleto surge una notificación adecuada del proceso. Adelantamos que no le asiste la razón. Nos explicamos a continuación.

Como indicamos, el debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. En su vertiente sustantiva el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. En su vertiente procesal, todo procedimiento adversativo debe satisfacer las exigencias del debido proceso, entre ellos, una notificación adecuada del proceso. Además, la falta de una notificación adecuada **puede impedir que las partes procuren los remedios que tienen a su disposición**, enervando con ello las garantías del debido proceso de ley.

De entrada, se hace imperioso establecer que, en el presente caso, el boleto fue expedido en un **operativo**, el cual el Municipio denomina en su escrito en oposición como una **inspección**. Este se llevó a cabo el 22 de septiembre de 2023, a las 9:51 de la noche por personal de la Oficina de Permisos del Municipio, entre otros funcionarios de otras agencias de gobierno. El funcionario de la Oficina de Permisos encontró que la operación del negocio violaba

los Artículos 1.3, 9.12(a) y 14.13(a) de la Ley núm. 161-2009. En específico, este "observó" que el negocio Papi Joe operaba una barra como uso principal, sin permiso para ello, ya que el permiso era de restaurante con venta al detal de bebidas alcohólicas. El Municipio argumentó que el recurrente "no puede seriamente alegar" que de la multa impuesta no surgen claramente los artículos en los que esta se basó por el mero hecho de que presentó la reconsideración. No obstante, nótese que el Artículo 1.3 de la Ley núm. 161-2009 hace referencia al alcance de la ley, el Artículo 9.12 inciso (a) establece la facultad de los Municipios para aprobar permisos, y el Artículo 14.13 inciso (a) dispone sobre la facultad para imponer multas hasta $50,000. Por ende, ninguno de estos artículos establecen actos específicos que impliquen infracciones ni su cuantía por cada violación. Los tres preceptos son meramente la base jurídica que le permite al Municipio crear su estructura para poner en vigor las delegaciones de la Ley núm. 161-2009. Además, el Artículo 14.10 de dicho estatuto claramente dispone que en el boleto se expresará claramente la falta administrativa y la disposición infringida.

Por tanto, el boleto aquí en controversia, y contrario a lo argumentado por el Municipio, **no cumple en expresar claramente la disposición infringida**. Incluso, a pesar de que en el mismo se describe el acto prohibido, el boleto **no señala de dónde surgen los $2,000** de la sanción que le fuera imputada. Los parámetros generales y actos sancionables mediante multa administrativa están dispuestos en la Sección 11.4.1.2 del Reglamento Conjunto de 2023, o en las ordenanzas que acorde con este el Municipio haya aprobado.

En cuanto a este último asunto, apuntalamos que en el derecho precedente quedó establecido que los municipios, aunque no se consideran agencias administrativas, la legislatura le extendió la autoridad para expedir multas tal si fueran entidades

administrativas. En consecuencia, y en aras de garantizar el derecho a un debido proceso de ley a los compueblanos que reciban una multa administrativa, el legislador expresamente ordenó a los municipios la adopción de un procedimiento uniforme similar a la LPAUG. De esta manera, los municipios son responsables de establecer un proceso de revisión.[7] En el presente caso, el Municipio no acompañó ni presentó una ordenanza aprobada para tales fines. Simplemente argumentó haber tramitado el procedimiento de revisión conforme a la Ley núm. 161-2009 y el Reglamento Conjunto de 2023. A su vez, de una simple lectura del expediente municipal surge que el procedimiento fue contrario a los referidos estatutos. Veamos.

a.

Los Artículos 14.6, 14.7 y 14.8 de la Ley núm. 161-2009, antes citados, y la Sección 11.4.1.1. del Reglamento Conjunto 2023 disponen el procedimiento, que según la recurrida fue aplicado al caso de autos. Conforme a los referidos estatutos, el inspector de la Oficina de Permisos, en representación del interés público, puede presentar una querella a través del *Sistema Unificado de Información* alegando que se incumplió con las condiciones de un permiso. Luego de presentada esa querella, es que se activa el término de treinta (30) días <u>para iniciar la investigación</u>. A su vez, dentro del plazo de sesenta (60) días de presentada la querella, el <u>investigador</u> emitirá sus <u>hallazgos o recomendaciones</u>. Si **el inspector** determina que no hubo incumplimiento se archiva la querella. Por el contrario, si de la investigación surge que las alegaciones son ciertas se **procederá a expedir una multa**. Como indicamos, el Reglamento Conjunto de 2023 **contiene los parámetros para determinar las cuantías de las multas administrativas**.

---

[7] Véase, *Torres, et al. v. Mun. San Juan*, 208 DPR 586 (2022).

En el presente caso, advertimos que el boleto fue expedido al recurrente el 22 de septiembre de 2023, a las 9:51 de la noche y que tres (3) días **después de su expedición** es que se realizó *una supuesta* querella a la que le asignaron el alfanumérico 23OP-63829QU-VSJ. En la copia del expediente municipal solo consta una impresión de la pantalla del *Sistema Unificado de Información.* En esta no surge quién fue el querellante. Sin embargo, de haber sido el mismo inspector que expidió el boleto, a saber: el Sr. William Torruellas, apuntalamos que este fue el mismo que a su vez realizó el *Informe Investigación* que requiere la ley. Asimismo, destacamos que en dicho informe este concluyó que procedía la imposición de la multa administrativa, la cual evidentemente ya había expedido. Reiteramos que el boleto, cuya revisión fue solicitada por el recurrente, no fue el resultado de un *Informe de Investigación* sino de un operativo llevado a cabo días antes. Por ende, en el caso de autos, el informe fue preparado cuatro (4) días después de expedido el boleto, esto es, el 26 de septiembre siguiente. En cuanto a este punto, destacamos que la Sección 11.4.1.1 de la Regla 11.4.1 del Reglamento Conjunto de 2023, similar a la Ley núm. 161-2009, dispone claramente que la multa será expedida una vez se concluya la investigación, no antes.

Sin duda, **estos hechos por sí solos constituyen una violación crasa al debido proceso de ley**. Sin embargo, del expediente surgen otras tantas las cuales exponemos a continuación.

b.

En cuanto a otro proceder de la recurrida, que consideramos improcedente, es que, del trámite procesal surge que, el 27 de septiembre, dos (2) días después de presentada la "alegada" querella, se le remitió al recurrente una carta en la que se le informó nuevamente sobre la referida violación al Permiso Único y se le

advirtió que, "conforme a las instrucciones al dorso del boleto", en el término de diez (10) días debía "presentar evidencia sobre la legalidad de las violaciones señaladas." Sin embargo, el referido plazo **no consta al dorso del boleto** según advertido ni surge de la Ley núm. 161-2009 ni del Reglamento Conjunto de 2023. El único plazo de diez (10) días encontrado es para elevar los autos a la División de Revisiones Administrativas de la OGPe.[8]

Por ende, la referida carta también **incumple con el requisito de una notificación adecuada del proceso**. Asimismo, nos preguntamos por qué el recurrente tenía que presentar "evidencia sobre la legalidad de las violaciones señaladas", si el boleto multa fue emitido a plena vista y como resultado de un operativo (investigación) del propio inspector de la Oficina de Permisos. Más aún, a esa fecha, ya había comenzado el proceso adversativo formal en su contra mediante la querella 23OP-63829QU-VSJ. Por lo que, sin duda la antedicha carta remitida al recurrente arroja serias dudas sobre el **alcance de la intervención** realizada por el personal de la Oficina de Permisos del Municipio; así como del propio procedimiento adjudicativo implantado para el procesamiento.

De otra parte, y respecto al proceso de revisión, surge del expediente municipal que el recurrente solicitó la reconsideración el 10 de octubre de 2023. Al día siguiente, la Oficina de Permisos emitió una *Hoja de Referido* en la cual indicó que la revisión estaba en tiempo, es decir dentro de los veinte (20) días dispuestos en el boleto. Posteriormente, la propia Oficina de Permisos emitió una *Citación a Vista Administrativa* donde **acoge** la reconsideración y señala *vista administrativa*. El referido documento indica que se cumplió con el término jurisdiccional dispuesto en la Sección 11.5.1.1 del Reglamento Conjunto de 2023. También se advirtió que

---

[8] Véase, Artículo 11.6 inciso (c) de la Ley núm. 161-2009, 23 LPRA sec. 9021r.

los procesos se regirían conforme al Capítulo 11.6 del mismo reglamento.

Resaltamos que la Sección 11.5.1.1, antes reseñada, establece el término de reconsideración para las **determinaciones finales** de la Junta de Planificación. **Lo que sin duda no está relacionado con el boleto expedido**. Por su parte, el Capítulo 11.6 regula el procedimiento que regirá las vistas administrativas ante la OGPe. Sin embargo, es claro que conforme al inciso (a) de la Sección 11.1.2.1 del Reglamento Conjunto del 2023, una **parte adversamente afectada** por una actuación **del Municipio** podrá presentar una solicitud de revisión administrativa **ante la División de Revisiones Administrativas de la OGPe dentro del término jurisdiccional de veinte (20) días,** contados a partir de la fecha de archivo en autos, de copia de la notificación de la actuación o **determinación final**. La resolución que emita la División de Revisiones será la determinación final de la agencia de la cual se puede presentar un recurso de revisión administrativa ante este foro apelativo.

En su escrito en oposición, la parte recurrida señaló que en cumplimiento con el debido proceso de ley acogió la solicitud de reconsideración. Al respecto subrayamos que las advertencias al dorso del boleto <u>son las mismas a las establecidas en la Sección 3.15 de la Ley núm. 38-2017</u>, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 LPRA sec. 9655 (LPAUG), para la reconsideración <u>de una resolución u orden parcial o final</u>. Por tanto, contrario a lo expresado por la parte recurrida, el término de quince (15) días para acoger la reconsideración <u>no es mandatorio,</u> ya que la propia advertencia del boleto y la Sección 3.15 de la LPAUG, disponen que la agencia <u>puede rechazarla de plano</u> o no actuar dentro dicho término. Así las cosas, el procedimiento para impugnar un boleto, como el expedido en el

presente caso, pudiera ser rechazado lo cual sin duda es contrario al debido proceso de ley en su vertiente procesal, al no proveer un procedimiento justo y equitativo. Reiteramos que el boleto aquí expedido no fue como resultado de una investigación a raíz de una querella, conforme establece la Sección 11.4.1 del Reglamento Conjunto de 2023.

Por otro lado, advertimos que la Sección 1.3 de la LPAUG dispone en sus definiciones que el término agencia **no incluye** los gobiernos municipales o sus entidades o corporaciones. A su vez, la Sección 4.2 de dicha ley, 3 LPRA sec. 9672, es clara en cuanto al derecho que tiene una parte afectada por una orden o resolución final de una agencia o foro apelativo gubernamental correspondiente de presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones dentro de un término de treinta (30) días. Así pues, es de estas agencias de gobierno que la parte afectada, inconforme con la *decisión final* **acude ante esta *Curia*** mediante un recurso de revisión judicial. Por ende, la Oficina de Permisos del Municipio de San Juan indujo a error al recurrente al notificarle que debía acudir ante este foro apelativo para revisar la resolución emitida por dicha oficina municipal.

Apuntalamos que el Artículo 4.006(c) de la Ley núm. 201-2003, según enmendada, conocida como "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003", 4 LPRA sec. 24y, establece que el Tribunal de Apelaciones conocerá, mediante recurso de revisión judicial, que acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. **De la lectura de esta disposición no surge que las decisiones adjudicativas de la Oficina de Permisos de los municipios sean revisables directamente por esta *Curia*.**[9] Los

---

[9] Véase, además, la Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 56. Sobre este particular, a manera ilustrativa, el Código Municipal

municipios son criaturas jurídicas de la Asamblea Legislativa de Puerto Rico. Como tales, corresponde a ésta determinar lo relativo a su estructura, facultades, deberes y funciones.[10] Acentuamos que en el presente recurso no se está cuestionando la autoridad del Municipio para llevar a cabo el proceso de solicitud, evaluación, concesión y denegación de permiso único, sino el trámite que tiene un ciudadano para la revisión de un boleto administrativo. De los estatutos previamente citados no surge la autoridad de la recurrida para celebrar un procedimiento adjudicativo de revisión de multa o boleto como el aquí expedido. Tampoco presentó ordenanza alguna que regule los tramites adversativos ante la Oficina de Permisos. Como indicamos, conforme dispone la Ley núm. 161-2009 y el Reglamento Conjunto de 2023, **la División de Revisiones Administrativas de la OGPe** es el foro encargado de revisar las actuaciones o determinaciones finales de los Municipios con Jerarquía de la I a la III respecto a las decisiones relacionadas con este estatuto.

Entonces, ante el hecho incuestionable de que el procedimiento se llevó a cabo de la manera incorrecta, enfatizamos que en el *Informe* emitido por la Oficial Examinadora **no se analizó ni se hizo referencia a la querella en contra del recurrente**. Se indicó que la "controversia gira entorno al Boleto Multa Núm. 002970 por $2,000" expedido el 22 de septiembre de 2023. Entonces, nos preguntamos para qué se realizó una querella y se activó el procedimiento analizado en el acápite (a) del presente escrito.

Por último, no podemos obviar en nuestro análisis que, si el boleto multa hubiese sido impuesto <u>por violación a alguna</u>

---

permite la revisión ante esta *Curia* de las decisiones de adjudicación de subastas. Artículo 1.050, Ley núm. 107-2020, 21 LPRA sec. 7081.

[10] Véase, *Colón v. Municipio de Guayama*, 114 DPR 193 (1983); *López, Fed. Coms. Unidos v. Mun. de San Juan*, 121 DPR 75 (1988).

ordenanza, el Código Municipal de Puerto Rico, *antes citado*, dispone claramente que aquellos municipios que posean *Tribunales Administrativos Municipales* tendrán jurisdicción primaria para revisar las multas administrativas. Si el resultado ante ese foro no le fuera favorable a la parte afectada esta **podrá acudir ante el Tribunal de Primera Instancia mediante solicitud de revisión judicial**. Por otro lado, la persona que fuera multada bajo los parámetros del Código de Orden Público tendrá treinta (30) días calendario, y no veinte (20) para solicitar revisión del mismo en el Tribunal Administrativo Municipal o en el Tribunal de Primera Instancia de la región judicial en que le fue impuesta la multa, según aplique. Reiteramos que el trámite llevado a cabo por la recurrida es tan confuso que, en el recurso de revisión instado ante este foro apelativo, el recurrente argumenta que "el presente caso es uno más, de los cientos, en los que el Municipio …, so color de un Código de Orden Público adoptado a la trágala, continua con su patrón de persecución y atropello en contra de los pequeños comerciantes, …"[11] Como ya expusimos, de ser haber sido así, el foro revisor sería el Tribunal de Primera Instancia de San Juan. Lo cual sin duda afectó el derecho que tiene el recurrente a una revisión judicial.

c.

En resumen, existe un interés gubernamental en velar por el estricto cumplimiento de las leyes y los reglamentos que administran los organismos públicos cuando la actividad realizada incide de manera significativa sobre la seguridad o salud pública. Además, el resultado de una intervención administrativa requiere una debida y razonable notificación, no solo de las infracciones impuestas sino de su **trámite para impugnarlas**. En este particular, reiteramos que de la evaluación del derecho aplicable surge con

---

[11] Véase, escrito de *Revisión Administrativa,* a la pág. 4.

meridiana claridad que el Municipio confunde los procedimientos y el trámite procesal aplicables, lo cual sin duda alguna incide en el debido proceso de ley <u>llevando a cabo procedimientos nulos y que afectan el derecho del recurrente a solicitar una correcta revisión</u>. En consecuencia, en aras de salvaguardar las garantías procesales del derecho constitucional a un debido proceso de ley, determinamos que procede dejar sin efecto la multa impuesta.

**IV.**

Por los fundamentos expuestos, se deja sin efecto la *Multa Administrativa*, Boleto Núm. 002970, impugnada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones