Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BLANCA S. RIVERA MARRERO<br><br>Demandante - Recurrida<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO Y OTROS<br><br>Demandado – Peticionario | KLCE202500438 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm. SJ2023CV09946<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Casillas[1]

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2025.

El Tribunal de Primera Instancia ("TPI") denegó desestimar una reclamación contra el Estado Libre Asociado de Puerto Rico (el "ELA") relacionada con una caída en una acera de una vía estatal. Según se explica en detalle a continuación, concluimos que es acertada la determinación del TPI porque, aun partiendo de la premisa de que el ELA ha delegado el mantenimiento de la acera a los municipios, cuando por ley se eximió de responsabilidad a dicho municipio por cualquier negligencia suya en dicho mantenimiento, el ELA necesariamente asumió la responsabilidad de responder por dicha negligencia.

I.

En octubre de 2023, la Sa. Blanca S. Rivera Marrero (la "Demandante") presentó la acción de referencia, sobre daños y perjuicios (la "Demanda"), en contra del ELA y de Mapfre-Praico

---

[1] Mediante la orden administrativa OATA-2025-085, se modificó la composición del panel.

Insurance Company (la "Aseguradora"), como aseguradora del Municipio de San Juan (el "Municipio").

Se alegó que, el 14 de julio de 2023, la Demandante caminaba por "la acera de la Calle Europa entre el Banco Popular y el edificio Centro Europa" en San Juan (la "Acera"), cuando "tropezó con unos adoquines rotos y/o desnivelados, lo que provocó que cayó al suelo, sufriendo un desgarre en el hombro izquierdo y otros traumas …".

La Demandante alegó que el "área donde sufrió su caída está bajo el control, jurisdicción y mantenimiento del ELA". Sostuvo que el accidente se debió a la negligencia del ELA o sus "representantes".

En noviembre de 2023, la Aseguradora instó una *Moción de Desestimación*. Planteó que la Acera no estaba bajo su jurisdicción, pues la calle asociada "es la carretera estatal PR-37". Arguyó que, por tanto, en virtud de lo establecido en el Artículo 1.053(g) de la Ley 107-2020, conocida como el Código Municipal de Puerto Rico, 21 LPRA sec. 7084(g) (el "Artículo 1.053(g)"), el Municipio no respondía por el accidente y, por tanto, la Aseguradora tampoco. Ello pues el Artículo 1.053(g) dispone que no están autorizadas las acciones de daños y perjuicios contra un municipio, por los actos u omisiones de uno de sus empleados, agentes o funcionarios, "cuando ocurren accidentes en las carreteras o aceras estatales".

Mientras tanto, el ELA contestó la Demanda. Planteó que el "control y mantenimiento" de la Acera, "por virtud de ley es responsabilidad del Municipio". Arguyó que, según la Ley de Travesías, *infra*, "las aceras a ambos lados de las travesías o carreteras estatales que discurren por las áreas urbanizables de los municipios son jurisdicción de cada municipio".

Mediante una Sentencia Parcial, notificada el 31 de enero de 2024, el TPI desestimó la reclamación contra la Aseguradora.

En diciembre de 2024, el ELA solicitó la resolución sumaria de la Demanda (la "Moción"). Adujo que, como no tenía el deber de

mantener la Acera, no podía ser objeto de una reclamación por la negligencia del Municipio en el descargo de su deber de mantenimiento de la Acera. Afirmó que lo resuelto en *González v. Municipio*, 212 DPR 601 (2023) (el "Precedente"), no aplicaba en este caso porque el accidente ocurrió 10 días antes de que se emitiera la referida decisión. Planteó que "no se le puede imputar la negligencia del Municipio al ELA".

La Demandante se opuso a la Moción. Arguyó que, de conformidad con el Precedente, el ELA era el "único responsable" en este caso. Sostuvo que, "a raíz de lo dispuesto por el Artículo 1.053, según interpretado por el Precedente, el [ELA] ha asumido la responsabilidad de responder incondicionalmente por los daños ocasionados por la negligencia de un municipio" en conexión con el mantenimiento de una acera estatal.

Mediante una *Resolución,* notificada el 5 de marzo de 2025 (la "Resolución"), el TPI denegó la Moción. Formuló las siguientes determinaciones de hechos que no están controvertidos:

1. La PR-37, calle Manuel Fernández Pavía, es una carretera estatal bajo la jurisdicción, control y mantenimiento del DTOP.

2. El área donde ocurrió el alegado accidente, acera que ubica en la Calle Manuel Fernández Pavía (PR-37) entre el Banco Popular de la Avenida Ponce De León y el edificio Centro Europa, está comprendida dentro del tramo de la PR-37 que está entre la intersección con la PR-25 hasta la PR-35 (Avenida Ponce De León hasta la Avenida Manuel Fernández Juncos).

3. Los adoquines desnivelados o rotos en la acera de la Calle Manuel Fernández Pavía (PR-37), que alegadamente contribuyeron al accidente de la demandante, no fueron instalados por el DTOP.

4. El día 17 de julio de 2024 el Sr. Raúl M. García, director ejecutivo del Departamento de Operaciones y Ornato, emitió una certificación indicando, en lo pertinente, lo siguiente: "Certifico, que no se han realizado trabajos de revitalización, mejoras o reconstrucción de las aceras en específico en la Avenida Ponce de León y las Calle Manuel Fernández Pavía y/o la acera que discurre con la Calle Europa del lado del Banco Popular hacia el Hospital Pavía de Santurce.

El TPI razonó que, en el Precedente, se estableció que el ELA respondería en estas circunstancias.

El 20 de marzo, el ELA solicitó la reconsideración de la Resolución, lo cual fue denegado por el TPI mediante un dictamen notificado el 24 de marzo.

Inconforme, el 23 de abril, el ELA presentó el recurso que nos ocupa, en el cual reproduce lo planteado ante el TPI. En particular, arguyó que el ELA "no tiene una responsabilidad vicaria por lo que omitió hacer el [Municipio] dentro del desempeño de su obligación de conservación de la acera". Prescindiendo de trámites ulteriores, de conformidad con lo autorizado por la Regla 7(B)(5) de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 7(B)(5), resolvemos.

II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al. v. BBVAPR,* 185 DPR 307 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. De Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de *certiorari*; al respecto, dispone, en lo pertinente (énfasis suplido):

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este

apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. ... .

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40 ("Regla 40"), establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

La sentencia sumaria es un mecanismo cuya finalidad es "propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario". *Meléndez González et. al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata v. J.F Montalvo,* 189 DPR 414, 430 (2013). Este mecanismo procesal

se rige por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En particular, la Regla 36.3 (e) de Procedimiento Civil, *supra*, dispone que procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, si la hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Así, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Meléndez González et. al., supra; SLG Zapata, supra; Const. José Carro v. Mun. Dorado,* 186 DPR 113, 128 (2012).

Si se concluye que "existe una controversia **real y sustancial** sobre hechos relevantes y pertinentes", no procede dictar sentencia sumaria. *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010) (Énfasis nuestro). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. *Meléndez González et. al., supra; Ramos Pérez,* 178 DPR a la pág. 213, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001); *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 577 (1997).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Ramos Pérez, supra; Vera v. Dr. Bravo,* 161 DPR 308, 332-333 (2004). Cuando de las propias alegaciones, admisiones o declaraciones juradas, surge una controversia de hechos, la moción

de sentencia sumaria es improcedente. *Mgmt. Adm. Servs., Corp. v. E.L.A.*, 152 DPR 599, 610 (2000).

Por su parte, quien se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada. La oposición debe exponer de forma detallada y específica los hechos pertinentes para demostrar que existe una controversia fáctica material, y debe ser tan detallada y específica como lo sea la moción de la parte promovente pues, de lo contrario, se dictará la sentencia sumaria en su contra, si procede en derecho. Regla 36 (c) de Procedimiento Civil, *supra*. Cuando la moción de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte opositora no puede descansar en meras alegaciones y debe proveer evidencia para demostrar la existencia de una controversia en torno a un hecho material. A tales efectos, el juzgador no está limitado por los hechos o documentos que se aduzcan en la solicitud, sino que debe considerar todos los documentos del expediente, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Const. José Carro v. Mun. Dorado*, 186 DPR a la pág. 130, citando a *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 280-281 (1990).

## IV.

Por otro lado, la titularidad, jurisdicción y el mantenimiento de las carreteras se origina de diferentes marcos jurídicos. El Artículo 1-02(a) de la Ley Núm. 54 de 30 de mayo de 1973 (la "Ley Núm. 54"), según enmendada, conocida como Ley de Administración, Conservación y Política de las Carreteras Estatales de Puerto Rico, 9 LPRA sec. 2102, establece que es una carretera estatal:

> [...] cualquier vía pública estatal para el tránsito vehicular que **haya sido construida de acuerdo a alguna Ley del Estado Libre Asociado de Puerto Rico o que, habiendo sido construida por una Agencia o Corporación Pública, Estatal o Federal o por un**

**municipio, haya sido transferida legalmente al Departamento de Transportación y Obras Públicas para su custodia y conservación**. [...] (Énfasis provisto).

Asimismo, el paseo es "la parte lateral de una carretera entre la zona de rodaje y la cuneta, o entre la zona de rodaje y la propiedad privada adyacente donde no hay cuneta". Artículo 1-02(c) de la Ley Núm. 54, 21 LPRA sec. 2101(c). Por otro lado, la servidumbre de paso es "la superficie de terreno ocupada por la carretera, e incluirá el área de rodaje, paseos, cunetas y terrenos adyacentes hasta la colindancia con la propiedad privada". Artículo 1-02(f) de la Ley Núm. 54, 21 LPRA sec. 2101(f). De acuerdo con lo anterior, **el concepto de carretera contempla las aceras como parte de estas, por lo cual, si la carretera es de jurisdicción estatal, la acera también lo es**. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 619 (2023).

De otra parte, el Artículo 403 del Código Político, 3 LPRA sec. 421,[2] le impone al Secretario de Transportación y Obras Públicas el deber de conservación de las carreteras a su cargo. *Rivera Jiménez v. Garrido & Co.*, 134 DPR 840, 851 (1993). De esta forma, "el Estado reconoció su obligación y consintió a responder de los daños que pueda ocasionar la falta de mantenimiento y conservación de las carreteras". *Íd.* En conexión, el Artículo 404 del Código Político, 3 LPRA sec. 422,[3] autorizó acciones por daños causados a personas o propiedades "por desperfectos, falta de

---

[2] En lo pertinente, el Artículo 403 del Código Político, *ante*, establece como sigue:
El Secretario de Transportación y Obras Públicas hará que las carreteras del Gobierno de Puerto Rico a su cargo se mantengan en buen estado de conservación y que se siembre el arbolado necesario a lo largo de las carreteras para proporcionarles sombra, renovando los citados árboles siempre que haga falta.

[3] El Artículo 404 del Código Político, *ante*, establece lo siguiente:
El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios por desperfectos, falta de reparación o de protección suficiente para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos.

reparación o de protección suficientes para el viajero en cualquier vía de comunicación...".

El Artículo 404 del Código Político, *ante,* "[c]onstituye el precepto especial a utilizarse para evaluar las acciones por daños que ocasionen a personas o propiedades en las vías públicas estatales, cuando los mismos fueron motivados por daños emergentes de desperfectos, falta de reparación o de protección suficientes". *Dones Jiménez v. Aut. De Carreteras,* 130 DPR 116, 119 (1992). Claro está, dicho estatuto "no convierte al Estado en un garantizador absoluto de la seguridad de las personas que utilizan las carreteras públicas". *Rivera Jiménez,* 134 DPR a la pág. 851, citando a *Rivera v. Pueblo,* 76 DPR 404, 407 (1954).

Por su parte, la Ley Núm. 49 de 1 de diciembre de 1917, 9 LPRA secs. 12-18, conocida como Ley de Travesías de Puerto Rico (la "Ley de Travesías"), se aprobó con el propósito de imponerle al entonces Comisionado del Interior de Puerto Rico (luego al Secretario de Transportación y Obras Públicas), la obligación ministerial de conservar y mantener los trozos de carreteras insulares que atraviesan las zonas urbanas de los pueblos, conocidos como travesías. Véase, Artículo 1 de la Ley de Travesías, 9 LPRA sec. 12. De acuerdo con la Ley de Travesías, los municipios tendrán jurisdicción sobre las dos zonas urbanizadas, a ambos lados de la travesía, que incluyen aceras y reatas o jardineras, y podrán fijar las alineaciones para construcción de edificios y aceras de acuerdo con lo que dispongan las ordenanzas municipales. Véase, Artículo 2 de la Ley de Travesías, 9 LPRA sec. 13; *Vélez v. La Capital,* 77 DPR 701, 707 (1954).

No obstante, el Artículo 1.053(g) del Código Municipal de Puerto Rico, 21 LPRA sec. 7084(g), establece categóricamente que no estarán autorizadas las acciones de daños y perjuicios en contra de los municipios "cuando ocurran accidentes en las carreteras o

aceras estatales". Resaltamos que, en cuanto al inciso (g) del Artículo 15.005 de la derogada Ley de Municipios Autónomos, **equivalente al Artículo 1.053(g) del vigente Código Municipal**, en el Precedente (*González, supra,* 212 DPR a la pág. 621), se dispuso lo siguiente:

> [...] *Nótese que el Art. 15.005 de la Ley de Municipios Autónomos, supra, no deja margen a otra interpretación en tanto y en cuanto específicamente libera de responsabilidad a los municipios cuando ocurren accidentes en carreteras o aceras estatales, entre otras cosas. Por lo tanto, resolvemos que el Municipio posee inmunidad al amparo del inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos, supra.* [...] (Énfasis en el original).

Por consiguiente, si se cumple cualquiera de las instancias del Artículo 15.005 de la Ley de Municipios Autónomos, "entonces se está ante una limitación para demandar a los municipios, para la cual no existe una excepción en ley. Se trata, pues, de una lista *numerus clausus* establecida por el legislador, y solo él puede variarla". *Íd.*, a la pág. 620. "Así pues, el factor determinante para que los municipios no respondan por reclamaciones de daños y perjuicios es la existencia del vínculo directo entre un accidente y el hecho de que este ocurra en una carretera o acera propiedad del Estado". *Íd.*

V.

Por virtud de la interpretación del Artículo 1.053(g) del Código Municipal, *ante*, adoptada en el Precedente, la norma es que, si la carretera es estatal, la acera automáticamente lo es también y, aunque sea un municipio el que ejerce control sobre la acera y el que incurre en negligencia al respecto, como consecuencia de lo cual alguien sufre algún daño, dicho municipio no responderá. *González Meléndez,* supra.[4] El Tribunal Supremo explícitamente determinó

---

[4] Lo alegado por el ELA ante el TPI, en cuanto a que no procede la aplicación del Precedente al caso de autos, porque la caída ocurrió diez (10) días antes de que se notificara el Precedente, resulta patentemente inmeritoria. No se trata de que allí se haya elaborado una "norma jurisprudencial", sino de que el Precedente aclaró el significado que tiene el Artículo 1.053(g) del Código Municipal, según recientemente enmendado, el cual estaba en vigor al momento de la caída de la Demandante.

que carecía de pertinencia si el municipio ha ejercido control sobre la acera o si ha sido negligente al respecto: "...resulta inmaterial discutir si el Municipio mantuvo la servidumbre de paso en condiciones razonables".

Ahora bien, precisamente a raíz de la determinación de política pública adoptada a través de los cambios al Artículo 15.005 de la derogada Ley de Municipios Autónomos, *ante*, y, luego, por la promulgación al Artículo 1.053(g) del Código Municipal, según interpretado en el Precedente, el ELA asumió la responsabilidad de responder incondicionalmente por los daños ocasionados por la negligencia de un municipio en el cumplimiento de su deber de mantener en estado adecuado una acera estatal, o por la negligencia del municipio al realizar cualquier trabajo en estas aceras.

Nuestra conclusión es la única compatible con el hecho de que los municipios son criaturas del ELA y con el hecho de que, si el municipio ha ejercido este tipo de labores, ello ha ocurrido de conformidad con la autorización y anuencia del ELA. Destacamos que los municipios son entidades jurídicas creadas por la Asamblea Legislativa en virtud del Artículo VI, Sección 1 de la Constitución del Estado Libre Asociado de Puerto Rico. Art. VI, Sec. 1 LPRA, Tomo 1. La referida disposición constitucional confiere al poder legislativo la autoridad para "crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función". Íd. Por tal razón, los municipios solamente poseen los poderes expresamente delegados por el legislador. Véase, *Café Rico, Inc. v. Mun. de Mayagüez*, 155 DPR 548, 553 (2001); *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 DPR 229, 236 (1988); *Colón v. Municipio de Guayama*, 114 DPR 193, 198 (1983). Por medio de la creación de los municipios, el ELA atiende de forma mucho más satisfactoria el bienestar social y económico de

un conglomerado vecinal específico, en atención a sus necesidades y urgencias particulares. *Colón*, 114 DPR a la pág. 199.

No obstante, los municipios no son soberanos por sí mismos y, al ser criaturas del Estado subordinadas a éste, la Asamblea Legislativa no puede delegarle más poderes e inmunidades que los que el Estado posee. *Pacheco Fraticelli*, 122 DPR a la pág. 236; *Colón*, supra. Claro está, "[e]n lo que concierne a la responsabilidad por daños ocasionados por un municipio, sus agentes o empleados, la Asamblea Legislativa puede limitar su responsabilidad en la misma medida en que podría limitar la propia responsabilidad del Estado. *Colón*, supra.

Así pues, la Asamblea Legislativa válidamente podía, como lo hizo, conferirle jurisdicción a los Municipios en cuanto a las aceras estatales, mediante la Ley de Travesías, limitar la responsabilidad de estos en el caso de que ocurran caídas en las aceras estatales y así causar que el ELA permanezca como el único responsable de la negligencia de un municipio al respecto.

Por consiguiente, en ausencia de una expresión legislativa explícita en contrario, no es razonable concluir que la implicación del Artículo 1.053(g) es que ni el ELA ni el municipio responderán por la negligencia de un municipio en el mantenimiento de una acera estatal. Sencillamente, el ELA optó, como cuestión de política pública, por asumir responsabilidad vicaria por la negligencia de un municipio en este contexto, conclusión también obligada en atención a lo establecido en el Código Político sobre la obligación del ELA en cuanto al mantenimiento y seguridad de las vías estatales. Véase, Art. 1-02(a) de la Ley Núm. 54 y los Artículos 403 y 404 del Código Político, antes citados.

En fin, como cuestión de derecho, el TPI actuó correctamente al denegar la Moción.

## VI.

Por los fundamentos expuestos, se expide el auto solicitado y se confirma la Resolución recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
